Michael Chen Esq. (SBN 218863)
Michael Chen Law Offices
2975 Huntington Dr. Ste 101
San Marino, CA 91108
michael@michaelchenlaw.com
Tel: (626) 249-2002
Attorneys for Plaintiff Chinese American Truckers Association

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Chinese American Truckers Association, a Nonprofit Corporation for Public Benefits; | **Civil Action No.** |
| Plaintiff | |
| v. | **COMPLAINT FOR DECLARATORY** |
| Federal Motor Carrier Safety Administration ("FMCSA"), a federal government agency; Derek D. Barrs, Administrator of FMCSA, in his official capacity; Steve Gordon, Director of California Department of Motor Vehicles, in his official capacity; | **AND INJUNCTIVE RELIEF** |
| Defendants | |

**FACTUAL HISTORY AND LEGAL BACKGROUND**

**A. Overview of the Dispute**

1.  Plaintiff Chinese American Truckers Association ("CATA") is a nonprofit public benefit corporation whose members include commercial drivers who reside and work in California, including within this District.

2.  Many CATA members hold California commercial driver's licenses ("CDLs"), including non-domiciled or limited-term CDLs, and rely on continued licensure and lawful access

to individualized state licensing processes to maintain employment as commercial drivers.

3. This action challenges (a) the Federal Motor Carrier Safety Administration's ("FMCSA") use of its state CDL oversight authority to demand and enforce an expansive, coercive pause in non-domiciled CDL and CLP processing, and (b) the California Department of Motor Vehicles' ("DMV") implementation of that pause through a categorical, statewide nonprocessing policy that deprives affected drivers of meaningful individualized process.

4. As implemented, the DMV's categorical nonprocessing policy produces two independent but related forms of harm to otherwise-qualified commercial drivers. First, the DMV's refusal to accept or adjudicate individualized renewal or extension requests causes drivers with expiring CDLs to lose, or imminently risk losing, their ability to lawfully work when their licenses reach expiration. Second, the DMV has issued cancellation notices to certain drivers whose CDLs are not otherwise set to expire in the near term, asserting that the CDL expiration date does not align with the expiration date of the driver's employment authorization or lawful presence documentation, and setting date-certain termination of commercial driving privileges without providing a meaningful opportunity to immediately reapply for a corrected CDL.

5. In both contexts, the challenged harms flow from the same FMCSA-driven enforcement posture and the DMV's resulting categorical refusal to provide timely, individualized adjudication, even where narrow, compliance-aligned processing could be provided without compromising public safety or federal oversight objectives.

**B. FMCSA's Preliminary Determination (September 26, 2025) Required an "Immediate Pause" as Corrective Action**

6. On September 26, 2025, FMCSA issued a preliminary determination letter to California relating to the State's issuance of non-domiciled commercial learner's permits ("CLPs") and CDLs. See **Exhibit A.**

7. FMCSA stated that the deficiencies uncovered by the 2025 Annual Program Review required specific "actions," beginning with an instruction to "[i]mmediately pause issuing non-domiciled CLPs and CDLs."

8. In the same corrective-action list, FMCSA required California to (among other things) identify unexpired credentials not issued in compliance, conduct an internal audit, notify FMCSA of findings, correct deficiencies, void/rescind unexpired noncompliant non-domiciled CLPs/CDLs, and reissue credentials in accordance with the applicable federal standards.

9. FMCSA also conditioned any resumption of non-domiciled CLP/CDL issuance on California ensuring that its overall statutory/regulatory and administrative framework "meet[s] each and every standard" of the relevant federal requirements.

10. FMCSA required California to respond within 30 days and stated that corrective actions could be implemented on a schedule "mutually agreed upon" by FMCSA and the State.

11. Although FMCSA's corrective-action framework expressly contemplated the identification of unexpired credentials, the voiding or rescission of noncompliant licenses, and the reissuance of compliant credentials, the enforcement posture that followed has been implemented in practice through cancellation of licenses without a functional or timely pathway for affected drivers to obtain reissued or corrected CDLs.

**C. The Pause Began in Late September 2025 and Has Continued Without a Date-Certain Off-Ramp**

12. Upon the receipt of FMCSA's September 26, 2025 preliminary determination, California implemented the required corrective action of pausing non-domiciled CLP and CDL issuance and related processing.

**13.** Critically, neither the preliminary determination nor the later conditional determination set a specific end date for the pause. Instead, FMCSA tied the ability to resume issuance and processing to completion of corrective actions and verification steps, creating an ongoing and indefinite cessation that predictably harms drivers with expiring credentials

and drivers subject to date-certain cancellation of otherwise-valid CDLs who are unable to obtain correction or reissuance while the pause remains in effect.

14. As a result, what FMCSA required as an "immediate pause" in September 2025 has continued for months and operates as an open-ended suspension for affected drivers and associated small businesses (including driver training programs), with no date-certain mechanism for otherwise-qualified individuals to obtain timely individualized adjudication before their licenses expire.

15. As of the filing of this Complaint, the pause imposed in September 2025 remains in effect, has continued for several months, and has no publicly stated or date-certain endpoint.

**D. FMCSA's Conditional Determination (November 13, 2025) Reaffirmed the Pause and Expanded Enforcement of Its Scope**

16. On November 13, 2025, FMCSA issued a "Conditional Determination," stating that FMCSA had served the preliminary determination on September 26, 2025, and describing California's response and subsequent communications. See **Exhibit B.**

17. FMCSA emphasized that the preliminary determination required California to take "immediate" corrective action pausing non-domiciled CLP/CDL issuance.

18. FMCSA then faulted California for allegedly failing to "fully pause" non-domiciled CLP/CDL licensing by continuing to process certain "upgrades," specifically describing a post-pause upgrade that removed an intrastate restriction and asserting that, had California complied with the pause, the driver "would not have an interstate CDL," and that a subsequent fatal crash "may have been avoided."

19. By treating post-pause licensing activity as a violation of the required corrective action, FMCSA did not merely request a pause; it defined and policed the scope of what counts as impermissible "issuance" or licensing activity during the pause, thereby pressuring California to interpret the pause as broadly as possible and discouraging individualized processing even for otherwise-qualified drivers seeking renewal, replacement, or extension to avoid expiration, as well as drivers seeking corrective reissuance or

amendment of CDLs subject to cancellation based on alleged administrative expiration mismatches.

20. FMCSA also reiterated that the required corrective actions "centered on DMV immediately pausing issuance of non-domiciled CLPs and CDLs," and that resumption could occur only after California meets federal standards and completes required steps.

**E. FMCSA Imposed Ongoing Preconditions and Threatened Sanctions, Reinforcing the Indefinite Nature of the Pause**

21. In the Conditional Determination, FMCSA required additional information by a specific date and stated that California could not demonstrate substantial compliance until it completed corrective actions, after which FMCSA would conduct a supplemental review to verify completion.

22. FMCSA further warned that California's failure to complete, or "undue delay" in completing, the required corrective actions would result in a Final Determination of substantial noncompliance and withholding of federal highway funds, and that California "may also be subject to decertification" of its CDL program.

23. FMCSA's threatened sanctions, coupled with FMCSA's expressed view that California's post-pause licensing actions constituted noncompliance with the pause, exert ongoing coercive pressure on California to maintain a broad, categorical nonprocessing posture—with no defined end date—while FMCSA's review process continues.

24. This sanctions pressure has incentivized the DMV to avoid not only renewal, replacement, or extension processing, but also any individualized corrective reissuance or amendment of non-domiciled CDLs, including in response to DMV-initiated cancellation notices, for fear that such processing would be treated by FMCSA as impermissible "issuance" during the pause.

25. FMCSA's determinations and enforcement posture have had immediate operative effect and concrete legal consequences. FMCSA required California to "immediately pause" non-domiciled CLP/CDL issuance as corrective action, has treated post-pause licensing activity as noncompliance, and has tied threatened statutory sanctions, including a Final

Determination, withholding of federal highway funds, and potential decertification, to California's adherence to FMCSA's interpretation of the pause. As a result, FMCSA's actions have altered the practical legal regime governing California's CDL program by compelling a statewide categorical nonprocessing posture and by deterring even narrowly tailored, compliance-aligned individualized processing, thereby directly causing ongoing deprivation of licensure and employment for otherwise-qualified commercial drivers.

**F. California's Implementation: Categorical Nonprocessing Produces Two Independent Deprivation Pathways**

**F-1. Non-Renewal /Non-Replacement/ Non-Extension: The "Expiration Cliff" for Otherwise-Qualified Drivers**

26. In response to FMCSA's directives and enforcement posture, the California Department of Motor Vehicles ("DMV") has adopted and/or maintained a categorical statewide practice of refusing to accept, process, or adjudicate individualized renewal, replacement, and/or extension requests for non-domiciled commercial driver's licenses ("CDLs") approaching expiration.

27. As applied, the DMV's categorical practice prevents otherwise-qualified drivers—who can demonstrate current eligibility and lawful presence documentation valid for a limited period—from obtaining timely individualized adjudication before their CDLs expire.

28. This categorical approach creates a rolling "expiration cliff": with each passing week and month that the pause remains in effect, additional otherwise-qualified drivers lose, or imminently risk losing, the ability to lawfully work as commercial drivers solely because their CDLs reach expiration without an opportunity for individualized renewal or extension processing.

**F-2. Mismatch-Driven Cancellation / Revocation: Early Termination of Otherwise-Valid CDLs by Date-Certain DMV Action**

29. Separate and independent from ordinary renewal or extension timing, the DMV's implementation of the corrective measure as directed by FMCSA has also produced a second deprivation pathway: the cancellation or revocation of CDLs that are not

otherwise expiring in the near term, based on an alleged mismatch between the CDL
expiration date reflected in DMV records and the expiration date of the driver's
Employment Authorization Document ("EAD") or other lawful presence documentation.

30. For several years, the DMV issued non-domiciled or limited-term CDLs with validity
dates that did not consistently match the expiration of the driver's work authorization or
lawful presence documentation, due to technical and administrative shortcomings in
DMV systems and processes. These expiration-date mismatches are administrative errors
attributable to the DMV, not misconduct or ineligibility by individual drivers.

31. Beginning in November 2025, the DMV initiated mass reviews of its records and issued
"Notice of Commercial Driver's License (CDL) Cancellation" letters stating that the
DMV had determined the recipient's CDL "is not consistent with California law which
requires that the expiration date of a CDL must be on or before the expiration of the legal
presence documents provided to the DMV," and informing recipients that the DMV
would cancel the CDL within a specified period unless the driver produced legal presence
documents meeting asserted federal guidelines.

32. For a subset of affected drivers, the operative harm is therefore not that the CDL is
naturally approaching its stated expiration date, but that the DMV has set an agency-
imposed cancellation or revocation date certain, including cancellation dates set for early
2026 and, for some affected drivers, on or before March 6, 2026, based solely on the
alleged expiration-date mismatch, thereby terminating commercial driving privileges
even though the CDL would otherwise remain valid beyond that date.

33. Critically, the DMV's cancellation notices do not provide affected drivers with any
meaningful opportunity to immediately reapply for a corrected or compliant CDL, nor do
they identify any available administrative process by which a driver may contest the
cancellation, submit updated lawful presence documentation, or obtain individualized
adjudication before the cancellation date. Instead, the DMV has issued cancellation
notices as a one-way directive terminating commercial driving privileges while

simultaneously maintaining a categorical refusal to accept or process applications for reissuance, correction, or amendment of non-domiciled or limited-term CDLs.

34. As a result, what the DMV labels a "cancellation" operates in practice as an indefinite termination of commercial driving privileges without a timely, realistic pathway to cure the DMV's own administrative error, and without meaningful notice or opportunity to be heard before the deprivation takes effect.

### G. A Narrow, Safety-Aligned Alternative Exists: A "Safe Lane" for Individualized Processing

35. Plaintiff does not seek an order requiring broad resumption of non-domiciled issuance during corrective actions, nor does Plaintiff challenge FMCSA's general oversight authority.

36. Plaintiff seeks narrow relief permitting California to accept and adjudicate individualized renewal, replacement, and/or extension requests for otherwise-qualified expiring non-domiciled CDLs, limited to applicants who demonstrate current eligibility and lawful presence documentation valid for the renewal/extension period—without FMCSA treating California as noncompliant solely for providing such individualized processing.

37. Separately, Plaintiff seeks narrowly tailored relief permitting California to accept and adjudicate individualized requests to correct, amend, or reissue non-domiciled or limited-term CDLs where the DMV has issued date-certain cancellation notices based on alleged administrative expiration-date mismatches—limited to otherwise-qualified drivers who demonstrate current eligibility and lawful presence documentation valid for the corrected credential period—without FMCSA treating such corrective processing as impermissible "issuance" during the pause.

38. The individualized relief Plaintiff seeks in either safe lane would not permit any driver to operate beyond the validity of verified lawful presence documentation and would not alter any training, testing, or safety qualification requirements.

### JURISDICTION AND VENUE

39. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the United States Constitution, and challenges federal agency action and enforcement posture that has coerced California into categorical nonprocessing that blocks individualized adjudication, including renewal/extension processing and corrective reissuance/amendment necessary to avoid date-certain CDL cancellation.

40. Plaintiff seeks declaratory and injunctive relief against federal agency action. Sovereign immunity is waived as to the federal defendants pursuant to 5 U.S.C. § 702.

41. This Court also has jurisdiction over Plaintiff's claims against Steven Gordon, in his official capacity as Director of California DMV arising under 42 U.S.C. § 1983 and the Fourteenth Amendment pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

42. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because this is a civil action against an agency of the United States and federal officers acting in their official capacities, no real property is involved, Plaintiff resides and/or maintains substantial operations in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District, including injuries to Plaintiff's members who live and work in this District, including members facing date-certain CDL cancellation and members facing imminent loss of licensure due to expiring credentials.

43. Venue is also proper in this District because Defendant Steve Gordon, in his official capacity as Director of the California Department of Motor Vehicles, administers policies that are applied to Plaintiff's members in this District and that have caused and will continue to cause harm here.

## PARTIES

44. Plaintiff Chinese American Truckers Association ("CATA") is a California nonprofit public benefit corporation. CATA's mission includes advocating for the lawful employment, economic welfare, and fair treatment of commercial drivers and related small businesses in the trucking industry. CATA has members who reside and work throughout California, including within this District.

45. CATA's principal place of business is in Riverside County, California.

46. CATA brings this action on behalf of itself and its members. CATA has associational standing because: (a) its members would otherwise have standing to sue in their own right due to imminent loss of commercial driving privileges and employment; (b) the interests CATA seeks to protect are germane to CATA's purpose; and (c) the claims asserted and the declaratory and injunctive relief sought do not require the participation of individual members beyond limited representative declarations establishing standing and irreparable harm.

47. CATA's membership continues to expand as additional affected commercial drivers join the Association in response to the challenged policies. Any declaratory or injunctive relief obtained in this action will benefit not only current members, but also future members who join CATA while the challenged practices remain in effect, ensuring that all similarly situated drivers may enjoy the fruits of the organization's advocacy and any favorable judgment obtained herein.

48. Defendant Federal Motor Carrier Safety Administration ("FMCSA") is an agency within the United States Department of Transportation responsible for oversight of state commercial driver's license programs.

49. Defendant Derek D. Barrs is the Administrator of FMCSA and is sued in his official capacity. He is responsible for issuing determinations concerning state compliance with federal CDL requirements and implementing enforcement actions under applicable federal statutes and regulations.

50. Defendant Steve Gordon is the Director of the California Department of Motor Vehicles ("DMV") and is sued in his official capacity. In that capacity, he is responsible for administering California's CDL program, including policies and practices governing the acceptance, processing, renewal, extension, and issuance of CDLs and CLPs.

51. CATA's members include drivers in this District who currently hold valid California CDLs that are set to expire in the coming weeks and months. Because the DMV refuses to accept or adjudicate individualized renewal, replacement, and/or extension requests for

non-domiciled CDLs, these members face an imminent "expiration cliff" that will deprive them of the ability to lawfully work as commercial drivers. CATA's members in this District also include commercial drivers who have received DMV cancellation notices based on alleged expiration-date mismatches and who face date-certain termination of commercial driving privileges without a meaningful opportunity to immediately reapply for a corrected CDL."

52. **Member A (Los Angeles County)** is a commercial driver holding a valid California non-domiciled CDL scheduled to expire on August 21, 2029, and who holds a valid Employment Authorization Document (EAD) with an expiration date of December 3, 2029. On December 27, 2025, Member A's vehicle was stolen, resulting in the loss of his physical CDL, Employment Authorization Document (EAD), Social Security card, and bank cards (Police Report No. [25-74848]). Although his CDL remains valid and has not expired, Member A was unable to obtain a replacement license due to the DMV's categorical pause policy and ongoing FMCSA audit. This denial placed him at imminent risk of total loss of livelihood.

53. **Member B (San Bernardino County)** is a commercial driver whose California non-domiciled CDL was scheduled to expire on January 2, 2026, and who holds a valid Employment Authorization Document (EAD) with an expiration date of November 9, 2030. On November 6, 2025, Member B received a notice stating his CDL would be cancelled within 60 days (by January 5, 2026). Although the DMV announced on December 30, 2025, a 60-day extension for those facing cancellation, it provided no mechanism for Member B to renew or extend his license before its expiration. As a result, Member B's CDL expired and became invalid on January 2, 2026. Without a court order restoring his eligibility and permitting renewal, Member B has permanently lost his livelihood due to the DMV's failure to provide a functional remedial process.

54. **Member C (Los Angeles County)** is a commercial driver whose California non-domiciled CDL is scheduled to expire on January 19, 2026, and who holds a valid Employment Authorization Document (EAD) with an expiration date of **June 17, 2029**.

Member C received an official renewal notice on October 21, 2025, and has never received any notice of cancellation. However, despite being in good standing, Member C has been blocked from renewing his license due to the DMV's "categorical pause" in response to the FMCSA audit. Member C's CDL is now set to expire and become invalid on January 19, 2026. Absent immediate judicial intervention to compel a renewal or extension, Member C will permanently lose his livelihood due to the DMV's refusal to process his timely renewal application.

55. **Member D (Orange County)** is a commercial driver whose California non-domiciled CDL is scheduled to expire on January 20, 2026, and who holds a valid Employment Authorization Document (EAD) with an expiration date of January 12, 2030. On October 21, 2025, Member D received an official renewal notice, followed by a cancellation notice on November 6, 2025, stating his license would be cancelled by January 5, 2026. Although the DMV's December 30, 2025, announcement purportedly extended the cancellation deadline for such drivers to March 6, 2026, the DMV failed to provide any administrative mechanism for Member D to renew his license or to record this extension in its system. As a result, Member D's CDL is set to expire and become invalid on January 20, 2026, notwithstanding the purported "extension."

56. **Member E (San Bernardino County)** is a commercial driver whose California non-domiciled CDL is scheduled to expire on March 15, 2026, and who holds a Valid Employment Authorization Document (EAD) valid through April 2, 2030. Member E received a cancellation notice on November 6, 2025 (effective by January 5, 2026), but subsequently received an email notification to renew his CDL on December 9, 2025, placing him in an administrative dilemma due to the DMV's "categorical pause" policy. Although the DMV's December 30, 2025, announcement purportedly extended the cancellation deadline to March 6, 2026, Member E received yet another written renewal notice on January 4, 2026. The DMV has created a contradictory situation: Member E cannot update his license per the renewal notices due to the freeze, yet faces cancellation risk if he waits until the March 6th extension date without a concrete renewal mechanism.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As a result, Member E's CDL is set to expire on March 15, 2026, and unless the Court intervenes to mandate a functional renewal process, he will permanently lose his livelihood.

57. **Member F (Los Angeles County)** is a commercial driver holding a California non-domiciled CDL restricted to intrastate operation as he was under the age of 21 at the time of issuance, with an expiration date of November 25, 2026. Member F did not receive the November 6, 2025, cancellation notice. Having now reached the age of 21, Member F is legally eligible to upgrade his license to an interstate CDL, which permits operation in 48 states. However, due to the DMV's "categorical pause" policy triggered by the FMCSA audit, DMV has refused to process his upgrade application. This refusal constitutes an unlawful restriction on Member F's right to pursue his chosen profession and expand his employment opportunities. Unless the Court compels the DMV to resume standard processing, Member F remains trapped in a restricted license status, causing him ongoing economic harm and depriving him of the interstate career opportunities to which he is legally entitled.

58. **Member G (Riverside County)** is a commercial driver holding a valid California non-domiciled CDL set to expire on October 20, 2030. On November 6, 2025, Member G received a cancellation notice stating his CDL would be revoked on January 5, 2026, because its expiration date exceeds that of his Employment Authorization Document (EAD), which is valid through September 11, 2029. Crucially, Member G presented the exact EAD at the time of his license issuance. The discrepancy in dates was caused solely by the DMV's own technical or clerical error, not by any misconduct or misrepresentation by Member G. Although the DMV purportedly extended his cancellation deadline to March 6, 2026, it has provided no mechanism to correct the underlying clerical error. Absent a court order compelling the DMV to rectify its administrative mistake and align his CDL expiration with his legal presence documentation, Member G will permanently lose his livelihood due to an error entirely within the DMV's control.

59. **Member H (Riverside County)** is a commercial driver holding a California non-domiciled CDL set to expire on May 30, 2026. On November 6, 2025, Member H received a cancellation notice effective January 5, 2026, alleging that his CDL expiration date exceeds his authorized period of stay. During his renewal, Member H presented his expired EAD (valid through May 3, 2023) and a timely-filed receipt for the EAD renewal. Under federal law, this entitled him to a 540-day automatic extension, making his legal presence valid until November 2, 2024. However, due to a clerical or system calculation error, the DMV issued a CDL with an expiration date of May 30, 2026, which exceeded the 540-day extension period. While the DMV purportedly extended its cancellation deadline to March 6, 2026, it has provided no mechanism to correct this administrative miscalculation. Absent a court order compelling the DMV to rectify its own error, Member H will permanently lose his livelihood due to a discrepancy created entirely by the DMV's failure to calculate his legal presence accurately.

60. **Member I (Los Angeles County)** is a commercial driver holding a California non-domiciled CDL set to expire on October 9, 2026. On November 6, 2025, Member I received a cancellation notice, effective January 5, 2026, that erroneously alleged that his CDL expiration date exceeded his lawful period of admission. When Member I renewed his license, he presented his EAD (valid through April 17, 2025) and a timely filed renewal receipt. Under the 540-day automatic extension rule, Member I's legal presence is valid until October 9, 2026 (the current CDL expiration date) and extends to November 5, 2026. Therefore, his CDL expiration date does not exceed his authorized stay. However, due to an administrative or system calculation error, the DMV wrongly flagged his license for cancellation. While the DMV purportedly extended the cancellation deadline to March 6, 2026, it has provided no way to correct this factual error. Absent a court order compelling the DMV to rectify its records, Member I will permanently lose his livelihood due to a cancellation based on entirely false premises.

1

## CAUSES OF ACTION

## COUNT I
## (APA: Agency Action Not in Accordance with Law / In Excess of Statutory Authority)
## 5 U.S.C. § 706(2)(C)
## (Against Defendants FMCSA and Barrs)

61. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62. Defendants FMCSA and Barrs have taken and implemented agency action—including determinations, directives, and enforcement positions communicated through FMCSA's oversight posture toward California's CDL program—requiring California to "immediately pause issuing non-domiciled CLPs and CDLs" and treating compliance with that pause as a dispositive benchmark for threatened federal sanctions.

63. FMCSA has further defined and policed the scope of this "pause" by criticizing and treating certain post-pause CDL processing activity as inconsistent with the pause, thereby pressuring California to adopt a categorical nonprocessing posture that sweeps in individualized, compliance-aligned processing for otherwise-qualified drivers. As implemented, this coercive posture has discouraged and/or prevented California from providing timely individualized adjudication in at least two contexts: (i) renewal, replacement, and/or extension processing necessary to avoid loss of licensure due to expiration, and (ii) corrective reissuance, amendment, or realignment processing necessary to avoid date-certain cancellation of otherwise-valid CDLs based on alleged administrative expiration-date mismatches.

64. In doing so, FMCSA and Barrs have effectively imposed a de facto, binding rule of general applicability regarding the scope of what constitutes impermissible "issuance" or licensing activity during the "pause," and have used threatened federal sanctions to coerce state licensing outcomes not required by the governing statutes and regulations.

65. FMCSA's actions and positions exceed FMCSA's statutory authority and are not in accordance with law, including by:

a. Expanding the concept of a "pause" in issuance beyond lawful federal requirements to

15
**COMPLAINT**

discourage or prevent individualized, compliance-aligned renewal, replacement, and/or extension processing for otherwise-qualified drivers who can demonstrate current eligibility and lawful presence documentation valid for the limited renewal/extension period; and

b. Expanding the concept of a "pause" in issuance beyond lawful federal requirements to discourage or prevent individualized, compliance-aligned corrective reissuance, amendment, or realignment processing for otherwise-qualified drivers facing date-certain cancellation of otherwise-valid CDLs based on alleged administrative expiration-date mismatches, where the corrective credential would remain tethered to verified lawful presence validity; and

c. Using threatened federal sanctions to coerce California into adopting an indefinite, categorical nonprocessing posture that is broader than necessary to address any legitimate compliance concerns and that is not required by the governing statutes and regulations.

66. The challenged agency action is therefore "in excess of statutory jurisdiction, authority, or limitations," and "not in accordance with law," and must be set aside under 5 U.S.C. § 706(2)(C).

67. Plaintiff is entitled to declaratory and injunctive relief prohibiting Defendants FMCSA and Barrs from treating California as noncompliant, or threatening adverse compliance consequences, solely because California accepts, processes, or adjudicates individualized, compliance-aligned (i) renewal, replacement, and/or extension requests for otherwise-qualified expiring non-domiciled CDLs, and/or (ii) corrective reissuance, amendment, or realignment requests for otherwise-qualified drivers facing date-certain cancellation based on alleged administrative expiration-date mismatches, in each case consistent with federal law and tethered to verified lawful presence documentation validity.

## COUNT II

### (APA – Arbitrary, Capricious, Abuse of Discretion) 5 U.S.C. § 706(2)(A)
### (Against Defendants FMCSA and Barrs)

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Defendants FMCSA and Barrs' challenged actions and positions regarding the scope, duration, and enforcement of the "pause" are arbitrary, capricious, and an abuse of discretion because, among other things:

70. FMCSA's Conditional Determination demonstrates that FMCSA has treated post-pause CDL processing activity as evidence of noncompliance, thereby encouraging and pressuring California to adopt the broadest possible interpretation of the pause and to maintain a categorical nonprocessing posture.

71. FMCSA failed to reasonably consider or accommodate important aspects of the problem and the foreseeable reliance interests at stake, including the severe and immediate consequences to otherwise-qualified commercial drivers whose ability to lawfully work depends on access to timely individualized processing. As implemented, FMCSA's enforcement posture has foreseeably resulted in at least two forms of collateral harm: (i) otherwise-qualified drivers with expiring CDLs or lost CDLs are unable to obtain individualized renewal, replacement, and/or extension adjudication before expiration, and (ii) otherwise-qualified drivers whose CDLs are not otherwise expiring in the near term face date-certain cancellation based on alleged administrative expiration-date mismatches and are unable to obtain corrective reissuance or amendment while the categorical nonprocessing posture persists.

72. FMCSA failed to consider reasonable, less restrictive alternatives that would preserve legitimate compliance objectives and public safety while avoiding unnecessary deprivation of licensure and employment, including allowing narrowly tailored "safe lanes" for individualized processing that remain fully tethered to verified lawful presence validity—such as (a) individualized renewals/ replacement /extensions for otherwise-qualified drivers with expiring non-domiciled CDLs, and (b) individualized corrective reissuance or amendment for otherwise-qualified drivers facing cancellation based on alleged administrative expiration-date mismatches.

73. FMCSA's approach, as implemented and enforced through its determinations and threatened sanctions, is not rationally connected to the asserted compliance objectives as applied to otherwise-qualified drivers seeking limited, compliance-aligned individualized adjudication. Instead, it operates to impose unnecessary collateral harm by effectively compelling California to treat any individualized processing as prohibited "issuance," even where the resulting credential would remain within the validity period of verified lawful presence documentation and would not relax training, testing, or safety qualification requirements.

74. The challenged agency action is therefore arbitrary, capricious, and an abuse of discretion and must be set aside under 5 U.S.C. § 706(2)(A).

75. Plaintiff is entitled to declaratory and injunctive relief limiting FMCSA's enforcement posture so that California is not penalized, and not threatened with sanctions, solely for providing narrowly tailored, individualized, compliance-aligned processing—whether (i) renewal, replacement, and/or extension adjudication for otherwise-qualified expiring non-domiciled CDLs, and/or (ii) corrective reissuance or amendment adjudication for otherwise-qualified drivers facing date-certain cancellation based on alleged administrative expiration-date mismatches, in each case consistent with federal law and tethered to verified lawful presence documentation validity.

## COUNT III

### (APA – Agency Action Unlawfully Withheld or Unreasonably Delayed)
### 5 U.S.C. § 706(1)
### (Against Defendants FMCSA and Barrs)

76. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

77. FMCSA has imposed deadlines and a supplemental review pathway related to California's corrective actions and has represented that it will evaluate compliance based on implementation of those actions and subsequent verification.

78. Despite the ongoing and immediate harm to otherwise-qualified commercial drivers, FMCSA has failed to take timely and reasonable steps to complete its review, clarify the permissible scope of compliance-aligned individualized processing during the pause, and/or otherwise mitigate foreseeable and severe collateral harm that flows directly from FMCSA's enforcement posture and threatened sanctions.

79. As implemented, FMCSA's continued maintenance of a coercive conditional posture—while California's categorical nonprocessing persists—has deprived otherwise-qualified drivers of timely individualized adjudication in at least two contexts: (i) renewal, replacement, and/or extension processing needed to avoid loss of licensure and lawful employment when CDLs reach expiration, and (ii) corrective reissuance, amendment, or realignment processing needed to avoid date-certain cancellation of otherwise-valid CDLs based on alleged administrative expiration-date mismatches.

80. FMCSA's failure to timely complete its review and/or to timely clarify that narrowly tailored, individualized, compliance-aligned processing will not be treated as impermissible "issuance" during the pause—where such processing remains tethered to verified lawful presence validity—constitutes agency action "unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1).

81. Plaintiff is entitled to declaratory and injunctive relief compelling Defendants FMCSA and Barrs to take timely action to complete their review and/or to clarify, on a timely basis, that California will not be treated as noncompliant solely for accepting, processing, or adjudicating narrowly tailored, individualized, otherwise-compliant requests during the pause, including (i) renewal, replacement, and/or extension requests for otherwise-qualified expiring non-domiciled CDLs and (ii) corrective reissuance, amendment, or realignment requests for otherwise-qualified drivers facing date-certain cancellation based on alleged administrative expiration-date mismatches, in each case consistent with federal law and tethered to verified lawful presence documentation validity.

1

## COUNT IV

### (42 U.S.C. § 1983 – Procedural Due Process)
### U.S. Const. amend. XIV
### (Against Defendant Steve Gordon, in his Official Capacity)

82. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

83. Defendant Steve Gordon, as Director of the California Department of Motor Vehicles ("DMV"), acts under color of state law in administering California's CDL program and implementing statewide licensing policies and practices.

84. The DMV's categorical nonprocessing deprives Plaintiff's members of protected interests without constitutionally adequate process. The DMV has adopted and/or implemented a blanket policy or practice of refusing to accept, process, or adjudicate individualized renewal, replacement, and/or extension requests for non-domiciled CDLs approaching expiration based on a categorical pause in non-domiciled CDL processing.

85. As applied to Plaintiff's members, the DMV's categorical refusal operates as a deprivation of protected liberty and property interests, including the ability to lawfully pursue their occupation as commercial drivers and the continued availability of state licensing benefits and procedures otherwise afforded to similarly situated CDL holders.

86. The DMV has implemented this categorical refusal without providing affected members timely and meaningful notice of an individualized basis for denial and without providing a meaningful opportunity to be heard before the effective deprivation occurs at license expiration.

87. The DMV's mismatch-driven cancellation practice separately deprives members of protected interests without notice, a hearing, or a meaningful opportunity to reapply or cure. Separate from renewal/ replacement/ extension processing, the DMV has issued "Notice of Commercial Driver's License (CDL) Cancellation" letters to certain non-domiciled or limited-term CDL holders whose CDLs are not otherwise expiring in the near term, asserting that the CDL expiration date does not align with the expiration date

of the driver's Employment Authorization Document ("EAD") or other lawful presence documentation.

88. These cancellation notices set date-certain termination of commercial driving privileges based on an alleged administrative expiration-date mismatch, even where the CDL would otherwise remain valid beyond the cancellation date, and thereby deprive affected members of the ability to lawfully work as commercial drivers.

89. Critically, the DMV's cancellation notices do not provide affected members with any meaningful opportunity to immediately reapply for a corrected or compliant CDL, do not identify any available administrative process to contest the cancellation, and do not provide a meaningful opportunity to submit updated lawful presence documentation or obtain individualized adjudication before the deprivation takes effect. Instead, the DMV has issued cancellation notices as a one-way directive terminating commercial driving privileges while simultaneously maintaining a categorical refusal to accept or process applications for reissuance, correction, or amendment of non-domiciled or limited-term CDLs.

90. As a result, what the DMV labels a "cancellation" operates in practice as an indefinite termination of commercial driving privileges without a timely, realistic pathway to cure the DMV's own administrative error, and without meaningful notice or opportunity to be heard before the deprivation takes effect.

91. The DMV's blanket practices are not narrowly tailored and are unnecessary as applied to otherwise-qualified drivers. The DMV's blanket refusal to provide individualized processing is not narrowly tailored to legitimate governmental interests as applied to otherwise-qualified members and is unnecessary to advance public safety where individualized processing can be limited to applicants who demonstrate current eligibility and lawful presence documentation valid for the limited period of the requested renewal, extension, or corrected credential, without altering any training, testing, or safety qualification requirements.

92. Defendant Gordon's acts and omissions described above violate the Due Process Clause of the Fourteenth Amendment.

93. Plaintiff seeks prospective declaratory and injunctive relief against Defendant Gordon in his official capacity to prevent ongoing and future violations of the Fourteenth Amendment, including an order requiring the DMV to provide constitutionally adequate notice and process and to accept and adjudicate individualized (i) renewal, replacement, and/or extension requests for otherwise-qualified expiring non-domiciled CDLs, and (ii) corrective reissuance, amendment, or realignment requests for otherwise-qualified drivers facing date-certain cancellation based on alleged administrative expiration-date mismatches, on a timely basis.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

**A.** For a declaration that Defendants FMCSA and Barrs' challenged actions, policies, and positions described herein are unlawful under the Administrative Procedure Act, including 5 U.S.C. § 706(2)(A) and § 706(2)(C);

**B.** For an order setting aside the challenged agency action pursuant to 5 U.S.C. § 706(2), and enjoining Defendants FMCSA and Barrs from treating the State of California as noncompliant, or threatening adverse compliance consequences, solely because California accepts, processes, or adjudicates narrowly tailored, individualized, compliance-aligned applications during the corrective-action period, including:

**(i)** individualized renewal, replacement, and/or extension requests for otherwise-qualified, expiring non-domiciled CDLs; and/or

**(ii)** individualized corrective reissuance, amendment, or realignment requests for otherwise-qualified drivers facing date-certain CDL cancellation based on alleged administrative expiration-date mismatches,

in each case consistent with federal law and tethered to verified lawful presence documentation validity;

**C.** In the alternative, for an order pursuant to 5 U.S.C. § 706(1) compelling Defendants FMCSA and Barrs to take timely action to complete their review and/or to clarify that California will not be deemed noncompliant solely for providing the narrowly tailored, individualized, compliance-aligned processing described in Paragraph **B**;

**D.** For a declaration that Defendant Steve Gordon's categorical refusal to accept, process, or adjudicate individualized applications in the two contexts alleged herein—(i) renewal, replacement, and/or extension processing for expiring non-domiciled CDLs and (ii) corrective reissuance/amendment processing necessary to avoid date-certain cancellation based on alleged administrative expiration-date mismatches—violates the Due Process Clause of the Fourteenth Amendment;

**E.** For a preliminary and permanent injunction against Defendant Steve Gordon, in his official capacity, requiring the DMV to provide constitutionally adequate notice and a meaningful opportunity to be heard, and to accept and adjudicate on a timely basis narrowly tailored, individualized, compliance-aligned applications in the following two contexts:

**(i)** renewal, replacement, and/or extension requests for otherwise-qualified, expiring non-domiciled CDLs; and

**(ii)** corrective reissuance, amendment, or realignment requests for otherwise-qualified drivers who have received, or are subject to, date-certain CDL cancellation notices based on alleged administrative expiration-date mismatches,

in each case limited to applicants who demonstrate current eligibility and lawful presence documentation valid for the requested credential period, and without altering any training, testing, or safety qualification requirements;

**F.** For Plaintiff's costs of suit herein and such other and further relief as the Court deems just and proper.

**G.** To the extent the Court deems additional relief necessary and appropriate, for an order requiring the DMV to implement a narrowly tailored, compliance-aligned process to accept and adjudicate non-domiciled CLP applications on an individualized basis for otherwise-qualified applicants who can demonstrate current eligibility and lawful presence documentation valid for

the duration of the credential, together with reasonable verification safeguards.

Respectfully,

Date: January 7, 2026

By: _/s/ Michael Chen_
Michael Chen, Esq.
Attorneys for
Plaintiff Chinese American Truckers
Association