TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
ALEXANDER L. FARRELL (Cal. Bar No. 335008)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-5557
    E-mail: Alexander.Farrell@usdoj.gov

Attorneys for Federal Defendants

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINESE AMERICAN TRUCKERS ASSOCIATION, a nonprofit corporation for public benefit,<br><br>        Plaintiff,<br><br>        v.<br><br>FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION, et al.,<br><br>        Defendants. | No. 5:26-cv-00063-JGB-DTB<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION [DKT. 3]**<br><br>*[Proposed Order and Declaration of Philip Thomas filed concurrently]*<br><br>Hearing Date:   January 20, 2026<br>Hearing Time:  11:00 a.m.<br>Ctrm:          1, Riverside<br><br>Honorable Jesus G. Bernal<br>United States District Judge |

# **TABLE OF CONTENTS**

DESCRIPTION                                                                                                    PAGE

TABLE OF AUTHORITIES .................................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I.    INTRODUCTION .................................................................................1

II.   STATUTORY AND REGULATORY FRAMEWORK ......................2

III.  FMSCA'S ANNUAL PROGRAM REVIEW OF THE CALIFORNIA DMV 3

IV.   FACTUAL ALLEGATIONS OF THE COMPLAINT...........................5

V.    ARGUMENT.........................................................................................6

      A.    This Court Lacks Subject Matter Jurisdiction Over this Petition for Review Lawsuit...........................................................6

      B.    Claims Against the Federal Defendants Are Moot Because of the Notice of Final Determination of Substantial Noncompliance Issued January 7, 2026.........................................8

      C.    CATA Is Not Entitled to a Temporary Restraining Order..........10

            1.    CATA Cannot Demonstrate a Likelihood of Success on the Merits of their APA Claims .....................................11

                  a.    CATA Cannot Demonstrate the Preliminary and Conditional Determinations are "Final Agency Actions"......11

                  b.    CATA Cannot Demonstrate a Likelihood of Success on the Merits of any of their APA Claims...................................12

            2.    The Expansive Relief that CATA Seeks from Federal Defendants through a TRO Is Extremely Excessive, Unjustified, and Far Exceeds the Relief Requested or Even Obtainable as a Matter of Fact and Law ...........................14

VI.   CONCLUSION....................................................................................15

i

# TABLE OF AUTHORITIES

DESCRIPTION                                                                 PAGE

## Cases

*Abdala v. INS*,
    488 F.3d 1061 (9th Cir. 2007) ............................................................................8

*Am. Rivers v. Nat'l Marine Fisheries Serv.*,
    126 F.3d 1118 (9th Cir. 1997) ..........................................................................8

*Americopters, LLC v. FAA*,
    441 F.3d 726 (9th Cir. 2006) ............................................................................7

*Arab v. Blinken*,
    600 F. Supp. 3d 59 (D.D.C. 2022) ..................................................................13

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006) ..........................................................................................6

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997) ............................................................................................8

*Ashcroft v. Mattis*,
    431 U.S. 171 (1977) ..........................................................................................9

*Bronco Wine Co. v. U.S. Dep't of Treasury*,
    997 F. Supp. 1309 (E.D. Cal. 1996) ...............................................................14

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016) ........................................................................................8

*Chalk v. U.S. Dist. Court*,
    840 F.2d 701 (9th Cir. 1988) ..........................................................................10

*Church of Scientology v. United States*,
    506 U.S. 9 (1992) ..............................................................................................8

*Cobell v. Kempthorne*,
    455 F.3d 301 (D.C. Cir. 2006) ........................................................................11

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005) ..........................................................................................6

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ........................................................................................12

*Gallo Cattle Co. v. U.S. Dep't of Agriculture*,
    159 F.3d 1194 (9th Cir. 1998) ........................................................................11

*Garcia v. Yonkers Sch. Dist.*,
    561 F.3d 97 (2d Cir. 2009) ..............................................................................14

*Habetler v. Burwell*,
    667 F. App'x 633 (9th Cir. 2016) ......................................................................8

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ............................................................................................6

*Hollingsworth v. Perry*,

570 U.S. 693 (2013) .................................................................................................. 8

*In re A Community Voice,*
878 F.3d 779 (9th Cir. 2017) ................................................................................... 7

*In re Cal. Power Exch. Corp.,*
245 F.3d 1110 (9th Cir. 2001) ............................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) .................................................................................................. 6

*Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.,*
286 F.3d 382 (6th Cir. 2002) ................................................................................. 12

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
571 F.3d 873 (9th Cir. 2009) .................................................................. 10, 11, 14

*Mazurek v. Armstrong,*
520 U.S. 968 (1997) ............................................................................................... 10

*Meghrig v. KFC W., Inc.,*
516 U.S. 479 (1996) ............................................................................................... 10

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................................................... 10

*Nuclear Reg. Comm'n v. Texas,*
605 U.S. 665 (2025) ............................................................................................... 10

*Nw. Envtl. Def. Ctr. v. Gordon,*
849 F.2d 1241 (9th Cir. 1988) ................................................................................. 8

*Ohio v. Env't Prot. Agency,*
603 U.S. 279 (2024) ............................................................................................... 12

*Rudolph v. Cal. Two Bunch Return, LLC,*
2017 WL 7101147 (C.D. Cal. May 19, 2017) ....................................................... 9

*San Francisco Herring Ass'n v. Dep't of the Interior,*
946 F.3d 564 (9th Cir. 2019) ................................................................................. 11

*Shahijani v. Laitinen,*
2023 WL 6889774 (C.D. Cal. Oct. 6, 2023) ......................................................... 13

*Singh v. Bardini,*
2023 WL 4669864 (E.D. Cal. Jul. 20, 2023) ........................................................ 13

*Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush & Co., Inc.,*
240 F.3d 832 (9th Cir. 2001) ................................................................................. 10

*United States v. Verdin,*
243 F.3d 1174 (9th Cir. 2001) ................................................................................. 8

*Univ. of Tex. v. Camenisch,*
451 U.S. 390 (1981) ............................................................................................... 14

*W. Watersheds Project v. Bernhardt,*
391 F. Supp. 3d 1002 (D. Or. 2019) ..................................................................... 14

*Western Radio Servs. Co. v. Glickman,*
123 F.3d 1189 (9th Cir. 1997) ............................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ...................................................................................................10

**Statutes**

5 U.S.C. § 704 ..........................................................................................................11
5 U.S.C. § 706 ..........................................................................................10, 11, 12
23 U.S.C. § 104(b) ....................................................................................................4
28 U.S.C. § 2342(3)(A) ....................................................................................1, 6, 7
28 U.S.C. § 2343 ......................................................................................................6
28 U.S.C. § 2344 ......................................................................................................9
49 U.S.C. § 31311 ............................................................................................2, 3, 7
49 U.S.C. § 31312 ................................................................................................2, 4
49 U.S.C. § 31314 ............................................................................................2, 3, 4

**Regulations**

49 C.F.R. § 384.212 ............................................................................................4, 13
49 C.F.R. § 384.301(a) ..............................................................................................2
49 C.F.R. § 384.307 ............................................................................................2, 3, 4
49 C.F.R. § 384.401(a) ..............................................................................................4
49 C.F.R. § 384.403 ..................................................................................................4
49 C.F.R. 384.405(a) ................................................................................................4

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendants Federal Motor Carrier Safety Administration ("FMCSA") and Derek D. Barrs, in his official capacity as the Administrator of the FMCSA (the "Administrator") (collectively the "Federal Defendants") oppose Plaintiff Chinese American Truckers Association's ("Plaintiff" or "CATA") *Ex Parte* Application for Temporary Restraining Order. Dkt. 3 ("TRO Application").

CATA's TRO Application alleges that the Federal Defendants acted in an "arbitrary and capricious" manner in conducting congressionally mandated oversight functions to develop, maintain, and enforce standards for State Commercial Driver's License ("CDL") programs, which include standards for testing and ensuring the fitness of a commercial motor vehicle drivers.

The TRO Application should be denied, as CATA has challenged the wrong agency actions in the wrong court. CATA alleges that FMCSA has unreasonably delayed the issuance of a final determination on California's compliance with federal regulations governing the issuance of CDLs, and that certain actions by FMCSA preliminary to a final determination led California to suspend the renewal of CDLs held by a class of CDL holders. At the outset, challenges to FMCSA's actions in this context must be brought as a petition for review in the court of appeals under the Hobbs Act, 28 U.S.C. § 2342(a)(3), and thus are not within this Court's jurisdiction. And in any event, CATA's claims are now overtaken by events: on January 7, 2026, FMCSA issued a final determination of noncompliance to California, mooting CATA's claim asserting that FMCSA has unreasonably delayed completion of its review of California's compliance and superseding the preliminary FMCSA actions CATA purports to challenge in this suit.

Finally, even if this Court were to exercise jurisdiction over this case, CATA's claims fail on the merits, and the exceedingly broad relief CATA seeks cannot be directed to FMCSA, which does not itself issue CDLs.

## II.     STATUTORY AND REGULATORY FRAMEWORK

The Commercial Motor Vehicle Safety Act of 1986, *as amended*, established performance standards with which State CDL programs must comply to avoid having amounts withheld from Highway Trust Fund apportionment under 49 U.S.C. § 31314 and to avoid CDL program decertification under 49 U.S.C. § 31312. 49 U.S.C. 31311(a). In this regard, States are required to be in substantial compliance with the requirements of 49 U.S.C. § 31311(a) and its implementing regulations in 49 C.F.R. part 383 and part 384, subpart B. Under 49 C.F.R. § 384.301(a), to be in substantial compliance with 49 U.S.C. § 31311(a), a State must meet every standard of part 384, subpart B by means of "the demonstrable combined effect of its statutes, regulations, administrative procedures and practices, organizational structures, internal control mechanisms, resource assignments (facilities, equipment, and personnel), and enforcement practices."

As part of its oversight, FMCSA conducts comprehensive Annual Program Reviews (APRs) of State CDL programs, in accordance with 49 C.F.R. § 384.307, to verify that States are in substantial compliance. During an APR, FMCSA evaluates all aspects of the States' CDL program, including knowledge and skills testing procedures, CDL issuance processes, procedures to report convictions and withdrawals, compliance with FMCSA's physical qualification and Drug and Alcohol Clearinghouse programs, issuance of non-domiciled CDLs, and other areas.

At the conclusion of the APR, if FMCSA makes a preliminary determination that a State does not meet one or more of the minimum standards for substantial compliance under part 384, subpart B, FMCSA will notify the State accordingly.[1] 49 C.F.R. 384.307(b). After the FMCSA makes a finding, the State will have 30 calendar days to respond to the preliminary determination explaining the State's corrective action or, alternatively, why FMCSA's preliminary determination is incorrect. 49 C.F.R. § 384.307(c). If FMCSA makes a final determination of substantial noncompliance,

---

[1] A preliminary determination of noncompliance is also known as a "finding."

FMCSA may initiate the withholding of certain Federal-aid highway funds and may decertify the State's CDL Program. 49 U.S.C. §§ 31314(c), 31312; 49 C.F.R. § 384.307(d), 49 C.F.R. part 384, subpart D.

### III.    FMSCA'S ANNUAL PROGRAM REVIEW OF THE CALIFORNIA DMV

In August 2025, FMCSA initiated an APR of the California Department of Motor Vehicles' ("California DMV") CDL program in accordance with 49 U.S.C. § 31311 and 49 C.F.R. § 384.307. Declaration of Philip Thomas ("Thomas Decl.") ¶ 6.

On September 26, 2025, FMCSA issued a Preliminary Determination to the California DMV setting out its findings from the APR. Thomas Decl. ¶ 7; Ex. A.

FMCSA reviewed California's "Response to the September 26, 2025, Letter Regarding Commercial Learning Permit and Commercial Driver's License Issuance," which the California DMV submitted on October 26, 2025, convened an informal conference with California DMV officials on October 30, 2025, and engaged in email and telephonic communications with California DMV officials on November 5 and 6, 2025. *See* Thomas Decl. Ex. C. The California DMV informed FMCSA that it took initial steps to rescind approximately 17,000 noncompliant non-domiciled CLPs and CDLs. *Id*.

On November 13, 2025, FMCSA issued a Conditional Determination to the California DMV reiterating the corrective actions required to bring the California DMV's CDL program into compliance with federal standards. Thomas Decl. ¶ 8; Ex. B.

On December 10, 2025, the California DMV submitted a "Response to November 13, 2025 Conditional Determination Regarding Non-Domiciled Commercial Driver's License and Learning Permits Issuance," which stated, among other things, that the California DMV issued cancellation notices to approximately 17,400 drivers and the cancellations would be effective on January 5, 2026. Thomas Decl. Ex. C.

However, on December 30, 2025, contrary to the mutually agreed upon date with FMCSA, the California DMV unilaterally informed the public that noncompliant non-domiciled CLPs and CDLs that were due to be cancelled on January 5, 2026 would not be

cancelled until March 6, 2026.[2] Thomas Decl. Ex. C. FMCSA subsequently informed to DMV that any extension was not approved and that failure or delay in the implementation of the required corrective actions would be contrary to the corrective action plan. *Id*. Ex. C.

On January 7, 2026, FMCSA issued a Notice of Final Determination of Substantial Noncompliance. Thomas Decl. ¶ 9, Ex. C. FMCSA made this Final Determination with the standards for issuing non-domiciled CLPs and CDLs set forth in 49 C.F.R. § 384.212(a). *Id*. Ex. C. FMCSA considered the implemented and planned corrective actions by the California DMV and determined that they are inadequate to correct the deficiencies noted in the Preliminary Determination because they were not implemented on a schedule mutually agreed upon by the Agency and the State. *Id*. FMCSA made its Final Determination in accordance with 49 C.F.R. §§ 384.307(d) and 384.309(a)(2).

Accordingly, pursuant to 49 U.S.C. § 31314(c)(1) and 49 C.F.R. § 384.401(a), FMCSA decided to withhold four percent of the National Highway Performance Program and the Surface Transportation Block Grant Program funds beginning in Fiscal Year (FY) 2027 that would otherwise be apportioned to California under 23 U.S.C. §§ 104(b)(1) and (2), which totals approximately $158,318,508. Thomas Decl. Ex. C. FMCSA further informed California that funds withheld following a substantial noncompliance determination are no longer available for apportionment to California. *Id;* 49 U.S.C. § 31314(d), 49 C.F.R. § 384.403.

As of this filing, the FMCSA has not issued a decision of decertification of California's CDL program. 49 U.S.C. § 31312(a); 49 C.F.R. 384.405(a).

---

[2] *Important Changes to Limited-Term Legal Presence CDL Requirements*, State of California DMV, https://www.dmv.ca.gov/portal/important-changes-to-limited-term-legal-presence-cdl-requirements (last visited Jan. 15, 2026); *California DMV Extends Date of Nondomiciled CDL Action*, State of California DMV, https://www.dmv.ca.gov/portal/news-and-media/california-dmv-extends-date-of-nondomiciled-cdl-action (last visited Jan. 15, 2026).

IV.    **FACTUAL ALLEGATIONS OF THE COMPLAINT**

According to the California Secretary of State's public registered business database, CATA is a non-profit corporation that was incorporated for the first time in the State of California on December 27, 2025, approximately eleven days before the filing of this lawsuit. CATA purports to have organizational members include commercial drivers who work in California. Compl. ¶ 1. However, CATA notes that its members hold California non-domiciled CDLs (non-U.S. citizens or non-Lawful Permanent Residents). Compl. ¶¶ 52-60.

As to the Federal Defendants, CATA asserts three claims under the Administrative Procedure Act ("APA"). Compl. ¶¶ 61-81. First, CATA challenges aspects of the Conditional Determination FMCSA issued to the California DMV detailing the corrective actions required to bring California DMV's CDL program into compliance with federal standards. *See* Compl. ¶ 65.

Second, CATA claims that FMCSA's Conditional Determination "failed to reasonably consider or accommodate important aspects of the problem and the foreseeable reliance interests at stake, including the severe and immediate consequences to otherwise-qualified commercial drivers whose ability to lawfully work depends on access to timely individualized processing." Compl. ¶ 71. This second claim appears to take issue the fact that California paused processing of, and cancelled some, non-domiciled CLPs and CDLs after the Conditional Determination.

Third, CATA claims that FMCSA filed to timely complete its APR of the California DMV and/or to failed to timely clarify that narrowly tailored, individualized, compliance-aligned processing will not be treated as impermissible. Compl. ¶ 80.

CATA's members seek the same TRO extraordinary relief from **all** defendants: a court order mandating a "safe lane" of individualized processing for renewal and/or extension adjudication for otherwise-qualified holders of non-domiciled or limited-term CDLs as well as an order implementing individualized processing for replacement of a lost or stolen physical CDL card for otherwise-qualified current non-domiciled CDL

holders. *See* Dkt. 3-6 (proposed order).

**V.   ARGUMENT**

> **A.   This Court Lacks Subject Matter Jurisdiction Over this Petition for Review Lawsuit**

At the outset, this Court lacks jurisdiction over a challenge to FMCSA's actions; such challenges should instead be brought in the Court of Appeals under the Hobbs Act, 28 U.S.C. § 2342(a)(3).

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). They "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010), *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-507 (2006) (holding that Rule 12(b)(1) authorizes subject matter jurisdiction to be raised by a party or by a court on its own initiative at any stage in the litigation). It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). This Court lacks jurisdiction over the Federal Defendants in this dispute because it should have been filed as a Petition for Review in the appropriate court of appeals.

The Hobbs Act provides that the "court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of . . . the Secretary of Transportation issued pursuant to…chapter 313…of title 49." 28 U.S.C. § 2342(3)(A). The appropriate **venue** is the court of appeals situated where "the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia Circuit." 28 U.S.C. § 2343.

Here, CATA challenges the FMCSA's issuance of the Preliminary Determination and Conditional Determination to the California DMV as being arbitrary and capricious because it led to the State pausing the processing of its non-domiciled CDL Program

CATA also claims that FMCSA may have exceeded its authority and claims that FMCSA failed to timely complete its APR of California DMV. *See* TRO Application at 12; Compl. ¶¶ 64, 69-70, 80. Indeed, CATA characterizes the action challenged as a "de facto, binding rule of general applicability" created by FMCSA. Compl. ¶ 64. As explained further below, that purported "rule" has been superseded by a final agency action CATA has not challenged. But in any event, the relevant jurisdictional statutes make clear that the "court of appeals . . . has exclusive jurisdiction" to review "all rules, regulations, or final orders of--the Secretary of Transportation" issued pursuant to "chapter 313" of Title 49. 28 U.S.C. § 2342(3)(A). And FMCSA's review of state compliance with the CDL regulations takes place under that chapter. *See* 49 U.S.C. § 31311.[3]

And even if FMCSA's Preliminary and Conditional Determinations were final, they would constitute "rules" or "final orders" that can only be challenged in the courts of appeals. 28 U.S.C. § 2342(3)(A). Either way, the claims cannot be heard in this Court. *See Americopters, LLC v. FAA*, 441 F.3d 726, 735 (9th Cir. 2006) ("The issue of finality leaves [plaintiffs] somewhere between Scylla and Charybdis. The dilemma is this: if the [challenged actions] are final orders . . . [the jurisdictional statute] preempts the district court from considering these claims. But if they are not final, then the Administrative Procedure Act . . . bars the district court from hearing the case.").

And while subsequent events have mooted CATA's claim that FMCSA has failed to complete its review in a timely manner, *see* Compl. ¶¶ 76-81, that claim in any event could only be heard in the courts of appeals. *In re A Community Voice*, 878 F.3d 779, 783 (9th Cir. 2017) ("Any court that would have jurisdiction to review a final rule has jurisdiction to determine if the agency's delay is unreasonable"). Again, either way, review in this court is inappropriate.

This Court thus lacks jurisdiction over CATA's suit and should deny the TRO

---

[3] For the same reason, even if CATA *had* challenged the January 7, 2026 final determination, that challenge likewise fall within the exclusive jurisdiction of the court of appeals. *See* 49 U.S.C. §§ 31311, 31314.

Application and dismiss this case without prejudice to be filed in an appropriate court.

**B. Claims Against the Federal Defendants Are Moot Because of the Notice of Final Determination of Substantial Noncompliance Issued January 7, 2026**

Federal jurisdiction requires a live case or controversy at every stage of litigation. *See* U.S. Const. art. III, § 2, cl. 1; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). A federal court does not have authority "to give opinions upon moot questions." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988).

To satisfy this requirement, "a litigant must continue to have a personal stake in the outcome of the suit throughout 'all stages of federal judicial proceedings.'" *Abdala v. INS*, 488 F.3d 1061, 1063 (9th Cir. 2007) (quoting *United States v. Verdin*, 243 F.3d 1174, 1177 (9th Cir. 2001)). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016), *as revised* (Feb. 9, 2016) (internal quotation marks omitted).

Because a "federal court does not have jurisdiction to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it[,] . . .[i]f an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) (internal quotation marks and citations omitted); *see also Habetler v. Burwell*, 667 F. App'x 633, 634 (9th Cir. 2016) (holding that where a Medicare coverage rule had been retired, a ruling that the retired rule was "invalid were it still in place would be an advisory opinion.") (citing

8

*Ashcroft v. Mattis*, 431 U.S. 171 (1977)); *Rudolph v. Cal. Two Bunch Return, LLC*, 2017 WL 7101147, at *2 (C.D. Cal. May 19, 2017) (where a "Plaintiff has already received all of the relief he seeks from the Court . . . his claim is moot and m[u]st be dismissed.").

CATA's claims are no longer live after FMCSA's issuance of the Final Determination on California's compliance with the relevant CDL regulations. To begin, CATA's claim that FMCSA has "unreasonably delayed" its review of California's compliance, Compl. ¶ 80, is plainly no longer viable now that FMCSA has in fact completed its review and issued the Final Determination. The Final Determination concluded that California is not in substantial compliance and explained that FMCSA would withhold four percent of Federal-aid highway funds for FY 2027. Thomas Decl. ¶ 9, Ex. C. There is thus no agency action to compel. And for similar reasons, CATA's claims that FMCSA's Preliminary Determination and Conditional Determination led California to pause the processing of non-domiciled CDLs, TRO Application at 12; Compl. ¶¶ 69-70, challenge determinations that no longer have practical effect after the issuance of the Final Determination. The point of the corrective actions outlined in the Preliminary and Conditional Determinations was to identify steps California was required to take to *avoid* a Final Determination of noncompliance; now that the Final Determination has issued, any purported injury to CATA and its members would flow from the Final Determination, not those preliminary actions.

To the extent CATA believes that the Final Determination compels California not to issue or renew non-domiciled CDLs, and moreover does so unlawfully, the appropriate next step would be for CATA to challenge the Final Determination through a petition for review in an appropriate court of appeals under the Hobbs Act, as discussed above. But at this stage, CATA challenges only actions that have been superseded by the Final Determination, which is not challenged here. [4]

---

[4] Under the Hobbs Act, 28 U.S.C. § 2344 permits a "party aggrieved" by an agency action to challenge it in the appropriate court of appeals within 60 days after its
*(footnote cont'd on next page)*

9

Finally, the basic legal remedy for a litigant who prevails on an APA claim is vacatur of the erroneous or unlawful final agency action or decision, not the issuance of permanent injunctive relief. 5 U.S.C. § 706(2)(A). Because FMCSA's Preliminary and Conditional Determinations have been superseded by the Final Determination, and vacating those documents would serve no purpose. If CATA takes issue with the Final Determination, it can attempt to challenge that action in the appropriate court of appeals.

### C.    CATA Is Not Entitled to a Temporary Restraining Order

The legal standard for issuing a TRO is identical to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 839 n. 7 (9th Cir. 2001). A TRO is "'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted). The moving party must make "a clear showing" that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008) (internal citations omitted). Where the government is a party, the balance of equities and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"A preliminary injunction can take two forms." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009). "A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" *Id*. (quoting *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988)). In contrast, a "mandatory injunction 'orders a responsible party to take action.'" *Id*. at 879 (quoting *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484

---

entry. The Federal Defendants do not concede that CATA is a "party aggrieved" or that a petition for review would be timely. *See Nuclear Reg. Comm'n v. Texas*, 605 U.S. 665, 678 (2025) ("those who were not license applicants or granted intervention in the Commission's licensing proceeding do not qualify as parties who can obtain judicial review under the Hobbs Act").

1  (1996)). "A mandatory injunction 'goes well beyond simply maintaining the status quo
2  [p]endente lite [and] is particularly disfavored.'" *Id.*

3      Even if this Court establishes jurisdiction over this case and finds the claims are not
4  moot, for the reasons explained below, CATA fails to establish that it and its members are
5  entitled to a TRO.

6          1.    <u>CATA Cannot Demonstrate a Likelihood of Success on the Merits of</u>
7                 <u>their APA Claims</u>

8      CATA's TRO Application fails to demonstrate a likelihood of success on the merits
9  on its APA claim because CATA's arguments on the merits of its arbitrary and capricious
10  claim and its unreasonable delay claim are likely to fail.

11          *a.*    *CATA Cannot Demonstrate the Preliminary and Conditional*
12               *Determinations are "Final Agency Actions"*

13      CATA's TRO Application fails to allege any reviewable final agency action under
14  the APA. For a district court to review and reverse an agency action pursuant to 5 U.S.C.
15  § 706 of the APA, there must be a "final agency action" that a district court can review.
16  *See* 5 U.S.C. § 704. To be deemed "final" for purposes of such judicial review, (1) the
17  action must mark the consummation of the agency's decision-making process and must
18  not be of a merely tentative or interlocutory nature, and (2) the action must be one by
19  which rights or obligations have been determined, or from which legal consequences will
20  flow. *Gallo Cattle Co. v. U.S. Dep't of Agriculture*, 159 F.3d 1194, 1198-99 (9th Cir.
21  1998) (quoting *Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1196 (9th Cir. 1997)
22  (internal quotes omitted)). In the Ninth Circuit, the final agency action requirement has
23  been treated as jurisdictional. *San Francisco Herring Ass'n v. Dep't of the Interior*, 946
24  F.3d 564, 571 (9th Cir. 2019). A court's jurisdiction does not extend to reviewing
25  generalized complaints about agency behavior. *Cobell v. Kempthorne*, 455 F.3d 301, 307
26  (D.C. Cir. 2006).

27      Here, CATA cannot meet this jurisdictional requirement because they identify no
28  final agency action by FMCSA. CATA cannot dispute that FMCSA's Preliminary and

1  Conditional Determinations have been superseded by the Final Determination. Thomas

2  Decl. ¶¶ 7-9. The 2025 determinations were clearly tentative and interlocutory nature.

3  Thus, the TRO Application fails to demonstrate any final agency action taken by

4  FMCSA that would be reviewable under Section 706(2) of the APA. Therefore, CATA

5  has failed to demonstrate a likelihood of success on the merits of any challenge under the

6  APA for this first reason.

7  b.  *CATA Cannot Demonstrate a Likelihood of Success on the*

8  *Merits of any of their APA Claims*

9  For agency action that is final and reviewable under the APA, a court may set aside

10  agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in

11  accordance with law." 5 U.S.C. § 706. "Under the arbitrary or capricious standard, the

12  party challenging the agency's action must show that the action had no rational basis or

13  that it involved a clear and prejudicial violation of applicable statutes or regulations."

14  *Kroger Co. v. Reg'l Airport Auth. of Louisville & Jefferson Cnty.*, 286 F.3d 382, 389 (6th

15  Cir. 2002) (quotations omitted). "The arbitrary or capricious standard is the least

16  demanding review of an administrative action." *Id*. In reviewing an agency's action under

17  that standard, a court may not "'substitute its judgment for that of the agency.'" *Ohio v.*

18  *Env't Prot. Agency*, 603 U.S. 279, 292 (2024) (citing *FCC v. Fox Television Stations, Inc.*,

19  556 U.S. 502, 513 (2009)). But it must ensure, among other things, that the agency has

20  offered "a satisfactory explanation for its action[,] including a rational connection between

21  the facts found and the choice made." *Id*. (citations omitted).

22  Here, CATA has not identified anything unreasonable about the length of time it

23  took FMSCA to complete the APR of California DMV. CATA cannot challenge that the

24  APR took approximately **three months** from the date of the Preliminary Determination to

25  the Notice of Final Determination of Substantial Noncompliance. Thomas Decl. ¶¶ 7-9,

26  Ex. A-C. The FMSCA's APR and the final decision is both complex and detailed. *See id*.

27  At the time FMCSA issued the Preliminary Determination, FMCSA sampled

28  approximately 145 records of drivers issued a non-domiciled CDL by the California DMV.

Thomas Decl. Ex. A. FMCSA's APR also uncovered evidence of systemic policy, procedural, and programming errors through a transaction-by-transaction review. *Id*. It found that approximately 25 percent of the total driver records sampled failed to comply with requirements in 49 CFR parts 383 and 384. in this regard, FMCSA uncovered numerous transactions where the California DMV issued non-domiciled CDLs that exceeded the expiration date of the driver's lawful presence documents and where the DMV issued a non-domiciled CDL to citizens of Mexico, and that the California DMV was not reporting issuance of temporary credentials to the Commercial Driver's License Information System (CDLIS) as required in 49 C.F.R. §§ 384.212 and 384.225. *Id*. Then two months after the Preliminary Determination, and after back-and-forth with California DMV, FMCSA issued an additional letter explaining the corrective actions required to bring California into substantial compliance with the standards for issuing non-domiciled CLPs and CDLs. Thomas Decl. Ex. B. And when California failed to take all required corrective actions, FMCSA issued a detailed and final order. Thomas Decl. Ex. C.

Indeed, even in contexts that involve non-economic issues of considerably greater urgency, i.e. adjudicating immigration applications, federal courts often dismiss unreasonable delay cases with significantly longer timelines. *See e.g., In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1125 (9th Cir. 2001) ("The cases in which courts have afforded relief have involved delays of years, not months.") (collecting cases); *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (summarizing immigration cases finding delays of three to five years reasonable); *see also Singh v. Bardini*, 2023 WL 4669864, at *2 (E.D. Cal. Jul. 20, 2023) (a 4-year delay was reasonable); *Shahijani v. Laitinen*, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023) ("In the immigration context, courts typically hold that a delay of less than four years is not considered unreasonable."). Setting aside the jurisdictional and mootness issues, CATA's claimed delay for its members should not be considered unreasonable especially when compared to other unreasonable delay cases that have determined delays of longer period of times are not unreasonable.

Moreover, as discussed, FMCSA has issued a Final Determination on California's

noncompliance with the relevant regulations. CATA does not challenge that Final Determination, instead focusing exclusively on the Preliminary and Conditional Determinations FMCSA issued to California. CATA thus offers no argument suggesting that the Preliminary and Conditional Determinations continue to have any effect on its members or that the Final Determination injures its members in any way. And even if the Final Determination could be reviewed in this case, the Final Determination is not arbitrary and capricious because it contains a reasoned explanation of why FMCSA made issued the determination and the relevant statutory and regulatory authority. *See generally* Thomas Decl. Ex. C.

Therefore, CATA has failed to demonstrate a likelihood of success on the merits of any challenge under the APA for this additional reason.

2. <u>The Expansive Relief that CATA Seeks from Federal Defendants through a TRO Is Extremely Excessive, Unjustified, and Far Exceeds the Relief Requested or Even Obtainable as a Matter of Fact and Law</u>

CATA also fails to establish the need for relief that justifies a temporary restraining order. "[A] temporary restraining order serves a purpose different from that of a preliminary injunction. The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *W. Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008 (D. Or. 2019) (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009)); *see also Bronco Wine Co. v. U.S. Dep't of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996) ("The purpose of a TRO is to preserve the *status quo* pending a full hearing on a preliminary injunction.").

Here, CATA fails to establish its entitlement to the extraordinary and overbroad relief that it requests by TRO, which would grant CATA's members all the relief they ultimately seek by the Complaint and much more. *Marlyn Nutraceuticals,* 571 F.3d at 878; *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final

judgment on the merits"). CATA's members seek the same extraordinary relief from **all** defendants: a court order mandating a "safe lane" of individualized processing for renewal and/or extension adjudication for otherwise-qualified holders of non-domiciled or limited-term CDLs as well as an order implementing individualized processing for replacement of a lost or stolen physical CDL card for otherwise-qualified current non-domiciled CDL holders. *See* Dkt. 3-6 (proposed order).

However, this expansive relief cannot be provided by FMCSA even by a court order. FMCSA does not issue CDLs or CLPs to drivers regardless of their domicile. Thomas Decl. ¶ 3. This Court thus cannot compel FMCSA to act to provide CDL renewals, extensions, or replacements. And even if this Court could afford CATA the relief they seek for their members, once the TRO is entered, CATA's members would no longer need to adjudicate this lawsuit because their non-domiciled CDLs would already be renewed, extended, or replaced by the California DMV as in their words would resolve the "non-processing regime." Summarily, this is not preserving the status quo and not the type of relief a Court should grant here as a temporary restraining order.

Thus, CATA is not entitled to the overbroad injunctive relief that that it requests from Federal Defendants and as such the TRO Application must be denied.

## VI.    CONCLUSION

For all the reasons explained above, this Court should deny Plaintiff's *Ex Parte* Application.

Dated: January 15, 2026            Respectfully submitted,

                                   TODD BLANCHE
                                   Deputy Attorney General
                                   BILAL A. ESSAYLI
                                   First Assistant United States Attorney
                                   DAVID M. HARRIS
                                   Assistant United States Attorney
                                   Chief, Civil Division
                                   DANIEL A. BECK
                                   Assistant United States Attorney
                                   Chief, Complex and Defensive Litigation Section



                                    */s/Alexander L. Farrell*
                                   ALEXANDER L. FARRELL
                                   Assistant United States Attorney

                                   Attorneys for Federal Defendants

## **Local Rule 11-6.2 Certificate of Compliance**

The undersigned counsel of record certifies that this Opposition Brief contains 5,022 words and is 15 pages, which complies with the word limit set by L.R. 11-6.1 and the page limit set by the Court's Standing Order.

Dated: January 15, 2026            */s/ Alexander L. Farrell*

                                   ALEXANDER L. FARRELL
                                   Assistant United States Attorney