1    ROB BONTA
     Attorney General of California
2    R. MATTHEW WISE
     SETH E. GOLDSTEIN
3    Supervising Deputy Attorneys General
     KRISTEN C.A. KIDO
4    SHIWON CHOE
     BARBARA HORNE-PETERSDORF
5    JAY C. RUSSELL
     Deputy Attorneys General
6    State Bar No. 122626
       455 Golden Gate Avenue, Suite 11000
7      San Francisco, CA  94102-7004
       Telephone:  (415) 510-3617
8      Fax:  (415) 703-5480
       E-mail:  Jay.Russell@doj.ca.gov
9    *Attorneys for Defendant Steve Gordon,*
     *California Department of Motor Vehicles Director*

10

11                 IN THE UNITED STATES DISTRICT COURT

12              FOR THE CENTRAL DISTRICT OF CALIFORNIA

13                        RIVERSIDE DIVISION

14

| | |
|---|---|
| 15  **CHINESE AMERICAN TRUCKERS ASSOCIATION, a Nonprofit Corporation for Public Benefits, ,** | 5:26-cv-00063-JGB-DTB |
| 16 | **DEFENDANT CALIFORNIA DEPARTMENT OF MOTOR VEHICLES DIRECTOR STEVE GORDON'S RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER** |
| 17                                  Plaintiff, | |
| 18            **v.** | |
| 19  **FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION** | |
| 20  **("FMCSA"), a federal government agency; his official capacity ; STEVE** | Date:        January 20, 2026 |
| 21  **GORDON, Director of California Department of Motor Vehicles, in his** | Time:        11:00 a.m. <br> Courtroom:   1 |
| 22  **official capacity,** | Judge:       Hon. Jesus G. Bernal <br> Trial Date:  Not Scheduled |
| 23                               Defendants. | Action Filed: January 7, 2026 |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

STATUTORY AND FACTUAL BACKGROUND ................................................. 2

    I.     Federal CDL Safety Regulations ............................................. 2

    II.    California Audit and FMCSA's Preliminary Determination ............... 3

    III.   FMCSA's Response to DMV's Corrective Measures ........................ 5

    IV.   FMCSA Prohibits DMV from Issuing or Renewing Non-
          Domiciled Commercial Driver's Licenses ............................................ 6

LEGAL STANDARD .............................................................................................. 8

ARGUMENT ............................................................................................................. 8

    I.     Any TRO Should Issue Against FMCSA, Not DMV ........................ 8

    II.    The Scope of Any TRO Must Be Administrable and Must Not
          Prejudice DMV in Its Compliance Audit By FMCSA ....................... 9

        A.   Scope and Administrability ................................................. 9

        B.   Safeguards Against FMCSA Retaliation for Compliance
             with a TRO .......................................................................... 10

CONCLUSION ........................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Ass'n of Univ. Professors v. Trump*
No. 25-CV-07864-RFL, 2025 WL 3187762 (N.D. Cal. Nov. 14, 2025)............9

*California v. Texas*
593 U.S. 659 (2021) ...................................................................................9

*Drakes Bay Oyster Co. v. Jewell*
747 F.3d 1073 (9th Cir. 2014)....................................................................8

*Food & Drug Admin. v. All. for Hippocratic Med.*
602 U.S. 367 (2024) ...............................................................................7, 9

*Hernandez v. Sessions*
872 F.3d 976 (9th Cir. 2017) ...................................................................10

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ...................................................................................9

*Rivera Lujan v. FMCSA*
No. 25-1215, 2025 WL 3182504 (D.C. Cir. Nov. 13, 2025) ...........................5

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*
240 F.3d 832 (9th Cir. 2001) .....................................................................8

*Winter v. Natural Resources Defense Council, Inc.*
555 U.S. 7 (2008) ......................................................................................8

*Young v. U.S. ex rel. Vuitton et Fils S.A.*
481 U.S. 787 (1987) ................................................................................10

STATUTES

49 U.S.C.
§ 113 .........................................................................................................2
§ 31301, *et seq.* .......................................................................................2
§§ 31311-12 ...............................................................................................2
§ 31314 .....................................................................................................2

Administrative Procedure Act (APA)............................................................5

# TABLE OF AUTHORITIES
## (continued)

**Page**

Cal. Veh. Code § 13100 ............................................................................... 4

**REGULATIONS**

49 C.F.R.
    pt. 383 ................................................................................................... 2
    pt. 384 ................................................................................................... 2
    § 1.86 .................................................................................................... 2
    § 383.5 .................................................................................................. 5
    § 383.23(b) ........................................................................................... 3
    § 383.71(f) ............................................................................................ 3
    § 383.73(f) ............................................................................................ 3
    § 383.73(f)(3) ........................................................................................ 5
    § 384.212 .............................................................................................. 3
    § 384.307(a) .......................................................................................... 2
    § 384.307(b) ...................................................................................... 2, 3
    § 384.307(c) .......................................................................................... 2
    § 384.307(d) .......................................................................................... 2
    § 384.401 .............................................................................................. 2
    § 384.405 .............................................................................................. 3
    § 384.405(a) ........................................................................................ 10

Cal. Code Regs. tit. 13, § 26.02(c) .............................................................. 4

**OTHER AUTHORITIES**

90 Fed. Reg. 46,515 .................................................................................... 5

## INTRODUCTION

In September 2025, the Federal Motor Carrier Safety Administration (FMCSA) made a preliminary finding that the California Department of Motor Vehicles (DMV) was not complying with certain laws pertaining to "non-domiciled" commercial driver's licenses issued to persons who are neither United States citizens nor permanent residents.  FMCSA required DMV to stop issuing such licenses until it had met the terms of a corrective action plan.

Although DMV disputed certain of FMCSA's legal conclusions, DMV notified FMCSA in mid-December that it had nonetheless undertaken corrective actions to remedy the deficiencies alleged and that it was ready to reissue corrected licenses.  But FMCSA directed DMV to take no action until DMV had addressed a new list of requirements and only after FMCSA had observed DMV's new licensing procedures in person.  Given this delay, and consistent with FMCSA's written request to provide notice of any change in plans, DMV notified FMCSA that it would defer the cancellation of certain licenses that were deficient under California—not federal—law until early March 2026 to avoid unnecessarily disenfranchising drivers who remain eligible for a commercial driver's license under federal rules.  In response, FMCSA abruptly issued a final determination withholding $158 million in highway funding for California and warned that California's entire commercial driver's license program could be decertified.

Plaintiff's temporary restraining order application seeks the renewal or extension of expiring non-domiciled commercial driver's licenses and the replacement of lost or stolen non-domiciled commercial driver's licenses.  It does not address license holders whose licenses DMV determined were deficient under California law and does not implicate any of FMCSA's concerns about DMV's non-domiciled commercial driver's license program.  The relief that Plaintiffs seek is the very kind of action that DMV sought to resume in mid-December but could not because of FMCSA's threat of sanctions.  Because FMCSA, not DMV, is the

impediment to such relief, no temporary restraining order should issue against DMV.  And if the Court determines that an order should issue against DMV, that order must be administrable and must not prejudice DMV in its efforts to meet the terms of the corrective action plan required by FMCSA, to protect DMV's licensing authority, and to retain the federal highway funding necessary for safe operation of California's highways.  DMV takes no position on whether a temporary restraining order should issue against FMCSA.

## STATUTORY AND FACTUAL BACKGROUND

### I.    FEDERAL CDL SAFETY REGULATIONS

Federal law sets baseline requirements for a person to hold a commercial driver's license (CDL).  *See* 49 U.S.C. § 31301, *et seq.*; 49 C.F.R. pts. 383, 384.  It mandates that state agencies issuing CDLs comply with certain federal requirements to remain eligible for federal highway funding and to continue to be certified to issue CDLs.  49 U.S.C. §§ 31311-12, 31314; 49 C.F.R. pt. 384.  FMCSA administers these regulations.  *See* 49 U.S.C. § 113; 49 C.F.R. § 1.86.  To ensure that state agencies are complying with federal law, FMCSA is authorized to audit state agencies' licensing procedures.  49 C.F.R. § 384.307(a).

If, after review of a state's CDL program, FMCSA determines that a state is not in substantial compliance with federal regulations, FMCSA must transmit to the state a notice of its preliminary determination of noncompliance.  49 C.F.R. § 384.307(b).  A state then has thirty calendar days to respond to this preliminary determination and explain either why the preliminary determination is incorrect, or what the state intends to do to come into compliance.  *Id.* subdiv. (c).  Upon consideration of the state's reply, if FMCSA determines that the state is still not in compliance with the federal standards for CDL issuance, FMCSA may issue a final determination of noncompliance.  *Id.* subdiv. (d).  Upon issuing a final determination of noncompliance, FMCSA may withhold federal highway funds according to a statutorily set schedule, *id.* § 384.401, or it may decertify the state's

CDL program.  *Id.* § 384.405.  If a state CDL program is decertified, that state is prohibited from issuing, renewing, transferring, or upgrading CDLs.  *Id.*

## II.  CALIFORNIA AUDIT AND FMCSA'S PRELIMINARY DETERMINATION

DMV is the state agency that registers motor vehicles and issues driver's licenses in California, including commercial driver's licenses.  California is permitted to issue non-domiciled CDLs and commercial learner's permits (CLPs) under sections 383.23(b), 383.71(f) and 383.73(f).  49 C.F.R. § 384.212 of Title 49 of the Code of Federal Regulations.  Under these laws, DMV has issued approximately 65,000 non-domiciled CDLs that are currently in effect.

FMCSA began an audit of DMV's CDL program in June 2025, requesting information concerning DMV's non-domiciled CDL program only.  Over the next three months, DMV provided FMCSA with thousands of pages of non-domiciled CDL records, held numerous conferences with FMCSA, and allowed FMCSA staff to conduct onsite inspections.

On September 26, 2025, after sampling approximately 145 non-domiciled CDL records, FMCSA sent DMV a preliminary notice alleging that California had not enacted laws "compatible" with federal regulations and that DMV was not in substantial compliance with federal requirements, including by (1) issuing non-domiciled CDLs that expired beyond the expiration date of a driver's legal presence documents; (2) issuing non-domiciled CDLs to citizens of Mexico who did not have status under the Deferred Action on Childhood Arrivals (DACA) program; (3) failing, in one instance, to retain documentation of a check on a driver's legal presence before issuing a non-domiciled CDL; (4) issuing temporary CDLs to applicants while verification of their legal status was pending; and (5) failing to report having issued temporary CDLs to the federal Commercial Driver's License Information System database.  Declaration of Steve Gordon (Decl. Gordon), Ex. A. In its notice, FMCSA demanded that DMV immediately pause issuing non-domiciled CDLs, as well as rescind all unexpired noncompliant non-domiciled

3

1    CDLs and reissue them in accordance with the relevant regulations.  Decl. Gordon,

2    Ex. A at 14-15.

3         On October 26, 2025, DMV responded to FMCSA's preliminary notice,

4    addressing FMCSA's legal assertions and detailing the numerous actions it had

5    completed or was undertaking to ensure that its laws, policies, and regulations

6    substantially complied with applicable federal regulations.  Decl. Gordon, Ex. B.  In

7    particular, DMV noted that no federal law, regulation, or rule required states to

8    issue non-domiciled commercial driver's licenses with expiration dates matching

9    the expiration date of lawful presence documents.  However, DMV also explained

10   that it had promulgated its own state regulations that went beyond federal

11   requirements and required that non-domiciled commercial driver's licenses must

12   expire no later than their term of legal presence.  Although DMV contested

13   FMCSA's legal position on expiration dates and other issues, DMV assured

14   FMCSA that it would continue to review its records and take appropriate action to

15   ensure compliance with federal law.

16        As part of that review process, DMV determined that approximately 17,000

17   non-domiciled commercial driver's licenses had expiration dates that did not match

18   dates of legal presence.[1]  Thus, under *California* law, DMV was obligated to cancel

19   those licenses.  Cal. Code Regs. tit. 13, § 26.02(c).  California law also provides

20   that canceled licenses may be renewed upon a showing that they can be legally

21   issued.  Cal. Veh. Code § 13100 ("Any person whose license has been canceled

22   may immediately apply for a license.")  On November 6, 2025, DMV issued

23   cancellation notices to the affected drivers, stating that cancellations would be

24   effective in 60 days, i.e., January 5, 2026.

25

26

27

28        _____
          [1] After further review, the number of affected licenses was adjusted to
     approximately 20,000 licenses.

### III. FMCSA'S RESPONSE TO DMV'S CORRECTIVE MEASURES

On November 13, 2025, FMCSA issued a Conditional Determination. Decl. Gordon, Ex C. FMCSA acknowledged that this determination was issued after considering DMV's plan to rescind the 17,000 non-domiciled commercial driver's licenses, as well as DMV's other efforts to comply with FMCSA's demand. But although FMCSA stated that its determination was "based on DMV's action" to "timely" rescind the 17,000 non-domiciled commercial licenses, *there was no determination or even indication that the cancellations must occur by a certain date*. Decl. Gordon, Ex. C at 10-11.

FMCSA's November 13 notice also demanded additional information about DMV's planned corrective measures, and DMV responded on December 10, 2025. Decl. Gordon, Ex. D. In its response, DMV again explained that applicable federal law does not require a CDL's expiration date to match the person's legal presence documents.[2] It nevertheless confirmed that it had issued cancellation notices under California law to drivers whose legal presence documents and license expiration dates did not match. DMV's correspondence also detailed the numerous corrective actions that it had undertaken to bring it into compliance with each and every applicable federal regulation, as FMCSA now interprets them, including the issuance of licenses to non-DACA persons and the other areas of alleged non-compliance identified by FMCSA.

Because DMV had fulfilled FMCSA's demands for corrective action, DMV

---

[2] On September 26, 2025, FMCSA issued an Interim Final Rule (IFR) that barred virtually all non-citizens—including asylum seekers, asylees, refugees, and DACA recipients—from eligibility for non-domiciled commercial driver's licenses. 90 Fed. Reg. at 46,515, 46,523-25 (amending 49 C.F.R. §§ 383.5, 383.71(f)(3)(i), 383.73(f)(3) [effective Sept. 29. 2025]). The IFR also included a new provision, not previously part of federal law, requiring that expiration dates of commercial licenses match the expiration date of lawful presence documents. *Id*. at 46,510-11. On November 13, 2025, the IFR was stayed in its entirety after a court held that FMCSA had likely violated the Administrative Procedure Act. *Rivera Lujan v. FMCSA*, No. 25-1215, 2025 WL 3182504, at *1-2 (D.C. Cir. Nov. 13, 2025). The IFR remains stayed. *Id*. at *2. Therefore, the IFR's expiration date provisions were—and are—not applicable.

advised FMCSA that it was prepared to begin reissuing licenses as of December 17, 2025. Decl. Gordon, Ex. D at 10. Doing so would have allowed DMV to satisfy the remainder of the corrective action mandated by FMCSA, specifically, to "*reissue* [any allegedly non-compliant] licenses in accordance with [relevant federal regulations] in effect at the time of the reissuance." *See id.* at 11. But on December 16, FMCSA advised DMV that DMV could "not resume issuing non-domiciled CLPs or CDLs until FMCSA completed its review of the State's corrective action(s) and has issued a determination that California is in compliance" with federal regulations. Decl. Gordon, Ex. E at 1.

## IV.  FMCSA PROHIBITS DMV FROM ISSUING OR RENEWING NON-DOMICILED COMMERCIAL DRIVER'S LICENSES

During conferences held the week of December 15-19, 2025, DMV continued to communicate with FMCSA concerning its corrective actions. FMCSA and DMV discussed extending the January 5 cancellation date to give FMCSA time to further review DMV's corrective actions. During those discussions, FMCSA staff agreed that moving the date would be a reasonable option given the short time frame to review. On December 18, and again on December 22, FMCSA wrote to DMV stating that if DMV intended to extend the January 5, 2026 cancellation date for the non-compliant California licenses, DMV should notify FMCSA in writing of the proposed extension. Decl. Gordon, Ex. F. FMCSA's December 22 email also outlined yet more subjects on which it demanded additional information. Among those demands, FMCSA wrote: "It's being reported California 'will not act on the notices of cancellations.' Can you please explain whether California has changed their [sic] position on license cancellations or whether cancellations will be effective January 5, 2026, as initially communicated?" Ex. F at 3.

On December 24, 2025, DMV responded to FMCSA's December 22 email. Decl. Gordon, Ex. G. In that email, DMV stated that its "position has not changed on license cancellations. However, in light of the ongoing discussions between

1  DMV and FMCSA, coupled with holiday season scheduling challenges, the January

2  5, 2026 date will need to be changed.  We will move that cancellation date to

3  March 6.  This will give time for FMCSA and DMV to work through the

4  compliance process and the items listed in your note.  We very much appreciate the

5  constructive relationship and look forward to FMCSA's on-site visits next year."

6  *Id*.

7      DMV received no response from FMCSA to this email communication.

8  Accordingly, six days later, on December 30, 2025, California provided public

9  notice that the license cancellation date would be extended 60 days, to March 6,

10 2026.  DMV anticipated that by March 2026 FMCSA's review would be complete

11 and that FMCSA would permit DMV to resume issuing non-domiciled CDLs.  The

12 extension would also allow adequate time for DMV to issue corrected licenses to

13 impacted drivers who still qualify for non-domiciled commercial driver's licenses

14 under applicable federal rules.

15      On January 7, 2026, FMCSA issued its Notice of Final Determination of

16 Substantial Noncompliance.  Decl. Gordon, Ex. H.  In its Notice, FMCSA

17 "acknowledge[d] that DMV has implemented or indicates that it plans to implement

18 some of the corrective actions required in the [September 26, 2025] Preliminary

19 Determination."  Ex. H at 9.  But the remaining issues that FMCSA identified to

20 support its Final Determination were, in FMCSA's view, related to the license

21 cancellation date, which FMCSA asserted was "critically important."  *Id*.

22 Concluding that DMV thus had not implemented "*all* required corrective actions,"

23 FMCSA advised California that it would withhold National Highway Performance

24 Program and Surface Transportation Block Grant Program funds totaling

25 approximately $158 million beginning in fiscal year 2026, stating that these funds

26 "are no longer available for apportionment to California."  *Id*. at 11 (emphasis in

27 original.)  It also threatened California with the decertification of DMV's entire

28 commercial driver's license program, despite expressing that it was "committed to

7

working with" California concerning DMV's CDL program.  Id.  As of the date of
this filing, FMCSA has not yet conducted an on-site visit to review DMV's
implementation of the corrective action plan.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be
awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v.
Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  Parties seeking
such extraordinary relief bear the heavy burden to demonstrate (1) a strong
likelihood of success on the merits, (2) the possibility of irreparable injury to the
plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the
plaintiff, and (4) advancement of the public interest.  *Id.* at 20.  "When the
government is a party, these last two factors merge."  *Drakes Bay Oyster Co. v.
Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  The analysis for a TRO and
preliminary injunction is "substantially identical."  *Stuhlbarg Int'l Sales Co. v. John
D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

## ARGUMENT

### I.    ANY TRO SHOULD ISSUE AGAINST FMCSA, NOT DMV

As shown above, FMCSA mandated that DMV pause issuing[3] any new or
renewed CDLs.  Despite its best efforts, DMV has not been permitted to resume
processing CDL applications, nor has it been permitted to renew corrected licenses
or replace lost or stolen ones.  Plaintiff acknowledges that DMV has not acted on its
own accord but has been directed by FMCSA.  *See, e.g.,* Application for TRO at 8
("The agency action challenged here—including FMCSA's determinations,
directives, and enforcement positions compelling an 'immediate pause' and
pressuring California to treat any individualized processing as impermissible

---

[3] Although FMCSA used the term "issuing," FMCSA made clear in its
interactions with DMV that it considered *any* transaction whatsoever related to non-
domiciled CDLs to be an "issuance" in violation of its direction.  *See, e.g.*, Decl.
Gordon Ex. C at 4 (alleging DMV failed to pause all issuances because DMV had
removed certain restrictions on existing CDLs).

'issuance'—has had concrete legal and practical consequences and is reviewable under the APA.")  Indeed, Plaintiff itself asserts that rather than acting independently, DMV has only acted because of "FMCSA's coercive enforcement posture" that has required DMV to "interpret the 'pause' [on issuing CDLs] broadly and to avoid individualized processing even where narrow, compliance-aligned processing could be provided without compromising public safety or federal oversight objectives." *Id.*  at 2-3.

When "a plaintiff challenges the government's 'unlawful regulation . . . of someone else' . . . causation 'ordinarily hinge[s] on the response of the regulated (or regulable) third party to the government action or inaction.'"  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992).  If that plaintiff shows "that the 'third parties will likely react in predictable ways' that in turn will likely injure the plaintiffs," the plaintiff has standing to pursue the coercive governmental agency.  *All. for Hippocratic Med.,* 602 U.S. at 383 (*quoting California v. Texas*, 593 U.S. 659, 675 (2021); *see also Am. Ass'n of Univ. Professors v. Trump*, No. 25-CV-07864-RFL, 2025 WL 3187762, at *10 (N.D. Cal. Nov. 14, 2025) (while university professors were concerned that university would "retaliate against them" for their speech, injunction issued against federal government because it was coercing the university to engage in the threatened retaliation).

Here, as Plaintiff alleges, DMV has not voluntarily undertaken an action that the Court can enjoin.  Accordingly, a TRO should not issue against DMV.  Instead, if any TRO is issued, it should be directed to FMCSA.

## II.    THE SCOPE OF ANY TRO MUST BE ADMINISTRABLE AND MUST NOT PREJUDICE DMV IN ITS COMPLIANCE AUDIT BY FMCSA

### A.    Scope and Administrability

If a TRO is issued, it must be administrable by DMV such that (1) DMV can

clearly ascertain when a party is covered by the TRO and (2) it does not conflict with current or potential orders directed to DMV by, and within the jurisdiction of, FMCSA.  For instance, an order that requires FMCSA to permit DMV to correct or replace the cards of valid CDL holders would not run afoul of any relevant federal regulation.  *See* 49 C.F.R. § 384.405(a).  And a TRO obligating the federal government to take action to avoid harm to the applicants is an appropriate use of this Court's equitable power.  *See, e.g., Hernandez v. Sessions,* 872 F.3d 976, 999 (9th Cir. 2017)  ("Mandatory injunctions . . . are permissible when "extreme or very serious damage will result" that is not "capable of compensation in damages").  In short, while a TRO enjoining DMV need not issue for Plaintiff to obtain the relief it seeks in its application, any TRO that does issue should consider the relative jurisdictional boundaries as between DMV and FMCSA, as well as DMV's ability to administer any order.

### B.    Safeguards Against FMCSA Retaliation for Compliance with a TRO

If the Court issues a TRO, compliance with that order should not work to prejudice DMV as it continues to discuss regulatory compliance with FMCSA, particularly as FMCSA continues to threaten DMV with further sanctions.  In other words, because defying an injunction is punishable by contempt, *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987), DMV should not be subject to any retaliation for complying with an order from this Court.  To protect the interests of all California CDL holders, including non-domiciled CDL holders, and the citizens of this State who depend on federal highway funding to keep their roadways safe, DMV requests that safeguards against retaliation by FMCSA be made an express part of any such order.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

DMV respectfully requests that it not be enjoined by a temporary restraining order and takes no position on whether any such order should issue against FMCSA.

Dated: January 15, 2026                    Respectfully submitted,

                                           ROB BONTA
                                           Attorney General of California
                                           R. MATTHEW WISE
                                           SETH E. GOLDSTEIN
                                           Supervising Deputy Attorneys General
                                           KRISTEN C.A. KIDO
                                           SHIWON CHOE
                                           BARBARA HORNE -PETERSDORF
                                           Deputy Attorneys General



                                           */s/ Jay C. Russell*
                                           _____

                                           JAY C. RUSSELL
                                           Deputy Attorney General
                                           *Attorneys for Defendant Steve
                                           Gordon California Department of
                                           Motor Vehicles Director*

SA2026300140

11

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Steve Gordon California Department of Motor Vehicles Director, certifies that this brief contains 3,180 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 15, 2026                    Respectfully submitted,

                                            ROB BONTA
                                            Attorney General of California


                                            /s/ Jay C. Russell
                                            _____

                                            JAY C. RUSSELL
                                            Deputy Attorney General
                                            *Attorneys for Defendant Steve*
                                            *Gordon, California Department of*
                                            *Motor Vehicles Director*

# CERTIFICATE OF SERVICE

Case Name:    ***Chinese American Truckers Ass'n v. Federal Motor Carrier Safety Administration, et al.***

Case No.:    **5:26-cv-00063-JGB-DTB**

I hereby certify that on <u>January 15, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **DEFENDANT CALIFORNIA DEPARTMENT OF MOTOR VEHICLES DIRECTOR STEVE GORDON'S RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER**

2. **DECLARATION OF STEVE GORDON IN SUPPORT OF DEFENDANT CALIFORNIA DEPARTMENT OF MOTOR VEHICLES DIRECTOR'S RESPONSE TO APPLICATION FOR TEMPORARY RESTRAINING ORDER (with Exhibits A-H)**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished electronically by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

This declaration was executed on <u>January 15, 2026</u>, at San Francisco, California.

| | |
|---|---|
| Vanessa Jordan | *Vanessa Jordan* |
| Declarant | Signature |