UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-0063 JGB (DTBx)** | Date | January 20, 2026 |
|---|---|---|---|
| Title | *Chinese American Truckers Association v. Federal Motor Carrier Safety Administration, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | MYRA PONCE |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Michael Chen | Alexander Layne Farrell, Jay Russell |

**Proceedings:** Order: (1) DENYING Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 3)

Before the Court is Plaintiff Chinese American Truckers Association's ("CATA") motion for an emergency temporary restraining order or preliminary injunction. ("Motion," Dkt. No. 3.) After considering the parties' arguments at a hearing held on January 20, 2026, and the papers filed in relation to the Motion, the Court **DENIES** the Motion.

## I.    BACKGROUND

On January 7, 2026, Plaintiff filed a complaint against Defendants Federal Motor Carrier Safety Administration ("FMCSA"), Derek Barrs, and Steve Gordon[1]. ("Complaint," Dkt. No. 1.) Two days later, Plaintiff filed its Motion. (Mot.) On January 12, 2026, the Court ordered Plaintiff to serve the Motion on Defendants. (Dkt. No. 12.) Defendants opposed Plaintiff's Motion on January 15, 2026. ("FMCSA Opp'n," Dkt. No. 17; "California Opp'n," Dkt. No. 19.) Plaintiff replied on January 18, 2026, informing the Court that it was abandoning its allegations against the FMCSA and would proceed only against California, through its allegations against Gordon. ("Reply," Dkt. No. 20.)

---

[1] Plaintiff Gordon is the Director of the California Department of Motor Vehicles. This order primarily refers to "California" and not Gordon for clarity's sake, though he is technically the party sued.

## II.  FACTS

Plaintiff asserts that it is a nonprofit public benefit corporation whose members include commercial drivers who reside and work in California.  (Compl. ¶ 1.)  Many CATA members hold California commercial driver's licenses ("CDLs"), including non-domiciled or limited-term CDLs.  (Id. ¶ 2.)

CATA challenges FMCSA's enforcement of a pause in California's ability to issue non-domiciled CDLs and California's implementation of a pause that allegedly "deprives affected drivers of meaningful individualized process."  (Id. ¶ 3.)

On September 26, 2025, FMCSA issued a preliminary determination letter to California regarding the state's issuance of non-domiciled commercial learner's permits ("CLPs") and CDLs.  (Id. ¶ 6.)  FMCSA informed California that it identified deficiencies in its issuance of CDLs and CLPs, and required California to "[i]mmediately pause issuing non-domiciled CLPs and CDLs."  (Id. ¶ 7.)  FMCSA also required California to take other corrective actions.  (Id. ¶ 8.)  FMCSA threatened that, absent California's compliance, the state could face denial of some federal highway funding and decertification of its entire CDL program.  (Id. ¶ 22.)  The pause started in September 2025 and has continued until the present.  (Id. ¶ 15.)

CATA's members include individuals whose non-domiciled CDLs have or will soon expire and cannot be renewed due to the pause.  (See id. ¶¶ 53-54.) Its members also include those who lost still-valid non-domiciled CDLs, for example through theft, and cannot have those CDLs replaced.  (See id. ¶ 52.)

Plaintiff's Motion seeks the following relief:

(1) Renewal and/or extension adjudication for otherwise-qualified holders of expiring nondomiciled/limited-term CDLs, tethered to valid lawful presence/work authorization documentation; and

(2) replacement (lost/stolen physical CDL card) for otherwise-qualified current CDL holders.

(Mot. at 1-2.)

On January 7, 2026, FMCSA issued a final determination of noncompliance to California. (FMSCA Opp'n at 4; "Final Determination," Dkt. No. 17-4.)  As a result, FMCSA decided to withhold four percent of funds under the National Highway Performance Program and the Surface Transportation Block Grant Program funds from California beginning in fiscal year 2027, which amounts to approximately $158,318,508.  (Id.)

At oral argument, the Court asked FMSCA to define "issuance" in the context of the kinds of CDL processing actions California was required to cease in order to comply with

FMCSA's directives. In response, counsel for FMCSA pointed the Court to the Final Determination, which indicates that—beyond mere provision of CDLs—even removal of certain CDL restrictions that have the effect of upgrading a CDL constituted "issuance" for purposes of the pause. ("Final Determination," Dkt. No. 17-4 at 6.)

At the hearing, California also shared its own understanding of the FMCSA's meaning of "issuance," quoting to the Court an email sent to Defendant Gordon by an FMCSA official:

> CA DMV may not resume issuing non-domiciled CLPs or CDLs until FMCSA completes its review of the State's corrective action(s) and has issued a determination that California is in compliance with the standards in subpart B of Part 384. This includes that CA DMV may not re-issue prior non-domiciled CLPs or CDLs or "full" CDLs that have been issued in violation of the FMCSRs or any improperly issued nondomiciled CLPs or CDLs until FMCSA completes its review of the State's corrective action(s) and has issued a determination that California is in compliance with the standards in subpart B of Part 384.

(Dkt. No. 19-1, Ex. E.)

### III. LEGAL STANDARD

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. Pro. 65(a)(1). The Court may issue a temporary restraining order without written or oral notice to the adverse party of its attorney only if two requirements are satisfied: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and (2) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Id. at (b)(1).

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their

officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Plaintiff must show that it is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tip in its favor. Winter, 555 U.S. at 20.

### A. Jurisdiction

Plaintiff challenges Defendant Gordon's actions under 42 U.S.C. § 1983. (Compl. ¶¶ 68-75.) The Court has jurisdiction over Section 1983 actions under 28 U.S.C. §§ 1331 and 1343.

### B. Likelihood of Success on the Merits and Likelihood of Suffering Irreparable Harm

The Court need not address the likelihood of success on the merits and Plaintiff's likelihood of suffering irreparable harm because, even assuming Plaintiff had satisfied these standards and they would weigh strongly in Plaintiff's favor, the Court finds that the public interest so substantially weighs in Defendant's favor that the Court cannot grant Plaintiff's Motion.

### C. Balance of Equities and the Public Interest

While Plaintiff asserts that its members face immediate and severe hardship tipping the balance of equities in its favor, the Court finds that the public interest plainly and substantially weighs against the relief Plaintiff seeks. Plaintiff seeks to enjoin California from pausing its consideration of non-domiciled CDL applications for renewal upon expiration or replacement where a CDL has been lost or stolen, but remained valid at the time it was lost. (Mot. at 1.) FMCSA, however, has made clear that California's "issuance" of non-domiciled CDLs, which FMCSA interprets broadly and includes renewals, is prohibited. (See Final Determination; Section III, *supra*.) Plaintiff's contention that the harms California risks constitute "a speculative fear of federal consequences" blinks reality. (Reply at 2.) California has already lost more than $150 million in federal highway funding as a result of FMCSA's determination that the state is noncompliant with federal standards. (Final Determination at 3.) The Final Determination is clear that, should California continue to administer its non-domiciled CDL

program in a manner FMCSA deems out of compliance with federal standards, FMCSA can withhold additional money and even decertify California's entire CDL program.  (Id. at 10.)

It would plainly be catastrophic to the state—and the public—for FMCSA to wholesale decertify California's CDL program because California's compliance with a court order contravenes an FMCSA Final Determination that is not before this Court for review.  Per the state's briefing, "[i]f a state CDL program is decertified, that state is prohibited from issuing, renewing, transferring, or upgrading CDLs." (California Opp'n at 2.)  Rather than a pause on just the non-domiciled CDL program's issuance capacity, such decertification would affect the entire state-wide CDL program.  CDLs are necessary for operation of a variety of commercial vehicles, including single or combined vehicles with a gross vehicle rating of 26,001 pounds or more, vehicles used for carrying more than 10 passengers, and 3-axle vehicles weighing more than 6,000 pounds. (See California Commercial Driver Handbook at 1-1, https://www.dmv.ca.gov/portal/file/california-commercial-driver-handbook-pdf/.)

FMCSA's threat to withhold more funding would double the amount already withheld, representing more than $300 million in total funding potentially withheld.  (Final Determination at 10.)  This is plainly no small sum.

Plaintiff lists nine members who are affected by the non-domiciled CDL issuance pause. (Compl. ¶¶ 52-60.)  While the Court is sympathetic to those individuals who are allegedly impacted by the pause, it cannot be that the interests of those nine individuals (and even many other non-domiciled CDL holders seeking replacement or renewal) outweighs the state's and public's interest in continued issuance capacity for all CDLs in the state, along with more than $300 million in highway funding.  It is also worth noting that, if the Court were to impose a temporary restraining order or preliminary injunction, if California began to comply and FMCSA subsequently decertified the CDL program, any of Plaintiff's members or other non-domiciled CDL holders who do not request renewals or replacements before decertification would be no better off than they are now.

## V.    CONCLUSION

For the reasons described above, the Court **DENIES** the Motion for a temporary restraining order or preliminary injunction.

**IT IS SO ORDERED.**